[No. E045792. Fourth Dist., Div. Two. May 18, 2009.]

RIVERSIDE SHERIFFS' ASSOCIATION et al., Plaintiffs and Appellants, v. COUNTY OF RIVERSIDE et al., Defendants and Appellants.

1412

## COUNSEL

Law Offices of Dennis J. Hayes, Dennis J. Hayes and Jon D. Dwyer for Plaintiffs and Appellants.

Jackson Lewis, Edward P. Zappia and Susan E. Groff for Defendants and Appellants.

## OPINION

**GAUT, J.**—This action arises from the County of Riverside's terminating Leisha Fauth's employment as a senior district attorney investigator and thereafter refusing to engage in appeal proceedings provided under a memorandum of understanding (MOU) covering Fauth's employment. The County of Riverside and its board of supervisors, district attorney, and executive officer (collectively, the county) appeal from a judgment entered after the trial court granted the first cause of action of Fauth's petition for a writ of mandamus, seeking an MOU appeal hearing.

Plaintiffs Fauth and the Riverside Sheriffs' Association cross-appeal the trial court's denial of the second cause of action of their writ petition, seeking relief under the Public Safety Officers Procedural Bill of Rights Act (POBRA) (Gov. Code, § 3300 et seq.[1]).

The county contends the trial court erred in granting the writ petition as to the second cause of action and ordering an MOU appeal hearing. The county argues that article XII of the MOU, relating to disciplinary appeals, is inapplicable because disciplinary action was not taken against Fauth. Rather, the county applied for involuntary disability retirement for Fauth.

---

[1] Unless otherwise noted, all statutory references are to the Government Code.

■ We conclude Fauth was entitled to an MOU appeal hearing on her employment termination. Even though, over eight months after Fauth was terminated, the county applied for involuntary disability retirement for her, Fauth was nevertheless entitled to an MOU appeal hearing because at the time of the trial court's ruling on Fauth's writ petition, the county had not reinstated her and thus her employment relationship with the county remained severed.

As to Fauth's cross-appeal, we conclude the trial court erred in denying Fauth's second cause of action for POBRA relief. Under POBRA, employment termination is per se punitive. Therefore POBRA applies. The judgment is affirmed as to the first and third causes of action and reversed as to the second cause of action, with directions that the trial court determine whether Fauth is entitled to POBRA relief under section 3309.5, subdivision (e).[2]

## 1. Factual and Procedural Background

Fauth was employed as a peace officer for over 11 years. During her employment, from September 2002 to November 2005, she received a job performance evaluation of "Meets Expectations" and numerous commendations from her supervisors. On March 29, 2006, a little over two months before her last day at work, Fauth was promoted from senior investigator to senior investigator II.

Fauth's removal from her job occurred after her husband, Ronald Fauth, sent a 16-page, rambling letter dated June 3, 2006, to the Riverside County Office of the District Attorney (DA), complaining that Fauth was being sexually harassed at work.

On June 5, 2006, Clay Hodson, chief investigator at the DA's office, received a voice mail message from Ronald, which was largely unintelligible. When Hodson mentioned the call to Fauth and told her he was not sure what her husband wanted, Fauth said Ronald wanted her to give Hodson something. Fauth handed Hodson a copy of Ronald's June 3 letter.

Hodson contacted Dr. Victoria Havassy, a clinical psychologist, who reviewed the letter for Hodson and told him she believed Ronald was

---

[2] The county requests judicial notice of (1) a notice of related cases, filed on May 6, 2008, in the United States District Court, Central District of California, and (2) a printout of a United States District Court docket for a lawsuit filed by Fauth in federal court on February 22, 2008. Judicial notice of these documents is denied on the grounds they are irrelevant and were not before the trial court when it ruled on Fauth's petition for writ of mandate.

paranoid/delusional and represented a threat to DA office employees. She further stated that Fauth also posed a threat because she had personally given Ronald's letter to Hodson and thus appeared to be facilitating her husband's paranoid/delusional behavior. Havassy told Hodson she could envision the Fauths entering the DA office and committing violent acts. Havassy therefore recommended placing Fauth on administrative leave and sending her to Havassy for a psychological fitness-for-duty evaluation.

Hodson sent Fauth a letter dated June 8, advising her that she had been placed on paid administrative leave, and suspended Fauth's peace officer powers, including carrying a gun, pending a fitness-for-duty evaluation. Hodson further informed Fauth that any failure to comply could constitute insubordination, which might result in disciplinary action, including termination. A week later Hodson ordered Fauth to undergo a fitness-for-duty evaluation with Havassy on June 20 and 23. Hodson stated in his June 15 letter, "we are concerned about your mental fitness to perform your duties as a peace officer, in particular your fitness to continue to carry a gun." As ordered, Fauth participated in the fitness-for-duty evaluation, which consisted of a battery of tests and a clinical interview by Havassy, focusing on Ronald's letter.

In July, Havassy advised Hodson that, based on the evaluation, she concluded Fauth was not fit for duty as a senior DA investigator and should not be permitted to carry a gun since she did not meet the minimum qualification of psychological fitness for peace officers in California.

In October 2006, as directed by the county, Fauth participated in an interactive process to determine whether employment accommodation could be made for Fauth's alleged mental disability. Fauth and Paul Collins, a Riverside Sheriffs' Association (RSA)[3] representative, met with county representatives. Fauth told the county representatives that she was not disabled.

By letter dated November 29, 2006, Hodson told Fauth the county was terminating her paid administrative leave effective November 23, 2006. Hodson stated that Fauth could use her sick leave and the county would assume she wished to do so unless advised otherwise.

---

[3] The RSA is an incorporated labor association that is the exclusive collective bargaining representative for Riverside County employees in the law enforcement unit (LEU). The LEU includes sheriff's deputies, sheriff's investigators, district attorney investigators, and correctional officers. The RSA and the county share a collective bargaining relationship wherein they negotiate and enter into written public sector labor agreements, referred to as MOU's, which contain terms and conditions of employment for LEU county employees. During the dispute in question, there was in effect an MOU between RSA and the county.

In December 2006, Fauth filed with the county a written grievance challenging termination of her paid administrative leave, and requested she be returned to paid administrative leave pending resolution of the matter, be reinstated to her former job position, and be reimbursed for lost wages and benefits due to the MOU violation.

In response to Fauth's grievance, the county notified Fauth in January 2007 that the county had erred in allowing Fauth to use sick leave during her leave of absence since the DA never asserted Fauth was ill. Rather, Fauth no longer met the Commission on Peace Officer Standards and Training (POST) standard of psychological fitness for carrying a gun and performing her investigator duties. In addition, the county stated that the DA had no proof of disability, Fauth was not claiming she was ill or disabled, and the county had no reason to disagree.

The county acknowledged that it had initiated the interactive process but belatedly recognized there was no need to continue it because there was no evidence Fauth had a disability requiring accommodation and there was no medical evidence of a disability qualifying Fauth for retirement. Under such circumstances, the county was left with no alternative but to remove Fauth "from employment based on the determination that she is no longer qualified to perform her duty."

By letter dated March 7, 2007, Hodson notified Fauth that she was not qualified to carry a gun as required in the performance of her job duties and therefore her employment was terminated, effective March 17, 2007. Hodson added that, since Fauth did not have a property right to her job because she was unqualified, she was not entitled to a hearing on the matter. Hodson added that Fauth was not being terminated for disciplinary reasons and therefore the appeal procedures in article XII of the MOU were inapplicable. In addition, Hodson stated: "Just as the District Attorney has asserted no illness or disability, you have provided no documentation from any physician, or other medical practitioner, indicating that you are ill or disabled in any way. Indeed, your representatives have consistently asserted that you consider yourself to be not disabled in any way. We have no reason to disagree with that assessment. . . . [D]isability retirement—industrial or non-industrial—while an option in some 'fitness for duty' cases is not an option in your case."

About a week later, the RSA filed with the county, pursuant to article XII of the MOU, a notice of appeal on Fauth's behalf, challenging termination of her employment. The county rejected Fauth's request for an MOU appeal hearing on the ground Fauth's employment was not terminated for a disciplinary reason but because she did not meet the standards for her job.

In April 2007, Fauth underwent a fitness-for-duty evaluation performed by Dr. Soltz, a licensed clinical psychologist selected by Fauth. Soltz provided a detailed, 19-page evaluation report in which he concluded Fauth was fit for duty: "She is fit for duty and there is no reason I can see why she could not carry a gun. There is nothing about her record or current status that reflects that she is a threat."

Fauth's attorney, Dennis Hayes, sent the county a letter requesting a joint hearing on Fauth's two pending appeals. The first appeal concerned the county's violating the MOU when it required Fauth to submit to a fitness-for-duty examination without allowing Fauth to choose the psychologist conducting the examination. The second appeal challenged termination of Fauth's employment. Hayes sent a second letter to the county enclosing a copy of Soltz's fitness-for-duty evaluation report and demanded the county reinstate Fauth to her former position and pay her full backpay and benefits accruing while she was on administrative leave.

The county refused to reinstate Fauth and rejected her demand for an MOU appeal hearing on her termination on the grounds Fauth's separation from employment was not for disciplinary reasons but, rather, because she could not meet the qualifications for her job.

In November 2007, the county applied for involuntary disability retirement for Fauth on the ground she had a psychiatric disability and thus was incapacitated mentally or physically within the meaning of PERS[4] law (§ 20000 et seq.). Fauth's last day in a paid status was January 4, 2007, and disability retirement was effective January 5, 2007.

Fauth filed a petition for writ of mandate, alleging the county's failure to allow her to appeal her employment termination violated article XII of the MOU (first cause of action), section 3304, subdivision (b) of POBRA (second cause of action), and the Fifth and Fourteenth Amendments to the federal Constitution (third cause of action). Fauth also requested $25,000 in civil penalties, backpay, and attorney fees and costs under POBRA.

On December 14, 2007, the trial court conducted a hearing on Fauth's writ petition and concluded that Fauth was entitled to an MOU appeal hearing, but was not entitled to relief under POBRA because the county's action was not

---

[4] "PERS" refers to the California state Public Employees' Retirement System.

punitive. The court further denied relief requested in the third cause of action on the ground Fauth's constitutional due process challenges were moot since the court was ordering an MOU appeal hearing.

## 2. Standard of Review

The county urges us to apply the substantial evidence test to the trial court's ruling on the writ petition. While a trial court's ruling under Code of Civil Procedure section 1085 is "ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial, credible and competent evidence" (*Pacific Gas & Electric Co. v. Department of Water Resources* (2003) 112 Cal.App.4th 477, 491 [5 Cal.Rptr.3d 283]), "when an appellate court is asked to resolve questions of law on undisputed facts, then the standard of review requires an independent analysis." (*Environmental Charter High School v. Centinela Valley Union High School Dist.* (2004) 122 Cal.App.4th 139, 145–146 [18 Cal.Rptr.3d 417].) The material facts in this case are undisputed. The issues under review here are founded on undisputed facts and are thus legal.

## 3. Writ Relief Under Code of Civil Procedure Section 1085

The county argues that Fauth is not entitled to writ relief under Code of Civil Procedure section 1085 because she has an adequate alternative remedy through a separate appeal of her disability retirement before the Office of Administrative Hearings. While Fauth has the right to appeal her involuntary disability retirement under section 21156, her disability retirement concerns a separate and distinct employment action, which is subject to review in a different forum, under different procedures, and by an administrative law judge, rather than a county-retained arbitrator, as specified in the MOU. There is no alternative form of relief by which Fauth can appeal her dismissal or compel an MOU appeal hearing, other than the instant writ petition.

## 4. Exclusivity of Disability Retirement Review Proceedings

PERS is the agency responsible for awarding disability retirement in this case. (§§ 20001, 20058.) PERS law (§ 20000 et seq.) provides a forum for appealing involuntary disability retirement (§ 21156), whereas article XII of the MOU provides a separate forum for appealing employment dismissals. Citing *Usher v. County of Monterey* (1998) 65 Cal.App.4th 210 [76

Cal.Rptr.2d 274] and *Langan v. City of El Monte* (2000) 79 Cal.App.4th 608 [94 Cal.Rptr.2d 254], the county argues that relief under PERS law is Fauth's exclusive recourse. (*Usher, supra*, at p. 218; *Langan, supra*, at p. 617; § 21156.)

Neither *Usher* nor *Langan* stands for the proposition that, because the county applied for involuntary disability retirement, Fauth no longer has a right to an MOU appeal hearing challenging her employment termination. *Usher* and *Langan* do not address the issue. They concern whether the correct procedures were followed under section 21156 in conducting a disability retirement appeal hearing. Here, Fauth is arguing she is entitled to appeal her employment termination pursuant to the MOU, which specifies different procedures and remedies than are provided when appealing disability retire- ment under PERS law. The county asserts Fauth is not entitled to both appeals, and since the disability retirement appeal is statutorily mandated and satisfies Fauth's due process rights to a hearing, it preempts the MOU appeal proceedings. *Usher* and *Langan* are not helpful in resolving this issue.

While Fauth is entitled to appeal involuntary disability retirement under PERS law, this does not bar her right to an MOU appeal, which provides Fauth with a separate opportunity to challenge her dismissal. Under the circumstances in this case, where the county removed Fauth from her job by both terminating her for cause and then applying for her involuntary disabil- ity retirement, Fauth remained entitled to an MOU appeal hearing challenging her termination for cause, in addition to a separate appeal contesting involun- tary disability retirement, unless there was a final determination upholding Fauth's disability retirement. There is no evidence in the record this occurred.

■ Termination for cause and involuntary disability retirement are two distinct, incompatible means of removing an employee from a job. These two means of removing an employee must be appealed in two entirely different forums, with the procedures under the MOU being contractual and the procedures for disability retirement being statutory. The two means of removal cannot coexist because once an employee is terminated for cause, the employment relationship is severed and retirement benefits are no longer possible.

■ This is explained in *Haywood v. American River Fire Protection Dist.* (1998) 67 Cal.App.4th 1292 [79 Cal.Rptr.2d 749] (*Haywood*), in which the court held an employee firefighter was not entitled to disability retirement because he was terminated for being unwilling to perform his job duties, not

because of a physical or mental condition. (*Id.* at p. 1296.) In reaching its holding, the *Haywood* court explained the difference between employees terminated for cause and those retired for disability: "[W]hile termination of an unwilling employee for cause completely severs the employer-employee relationship, disability retirement laws contemplate the potential reinstatement of that relationship if the employee recovers and no longer is disabled." (*Ibid.*) The relationship between the employee and employer must thus continue in order for an employee to recover disability retirement benefits.

■ The circumstances in the instant case are distinguishable from *Haywood* in that, here, the county terminated Fauth for cause, thus severing the employment relationship, and denied Fauth's request for an MOU appeal on the ground Fauth's termination was not disciplinary or based on illness or disability, yet eight months later it applied for involuntary disability retirement for Fauth based on mental disability. The *Haywood* court does not address the issue here of whether Fauth remains entitled to an MOU appeal hearing on her dismissal. *Haywood* is instructive, however, in explaining that "[W]here, as here, an employee is fired for cause and the discharge is neither the ultimate result of a disabling medical condition nor preemptive of an otherwise valid claim for disability retirement, the termination of the employment relationship renders the employee ineligible for disability retirement regardless of whether a timely application is filed." (*Haywood, supra,* 67 Cal.App.4th at p. 1307.)

The problem in the instant case is that the record indicates the county may have terminated Fauth for cause based on an underlying mental disability and thereafter applied for her involuntary retirement disability without withdrawing its termination of Fauth for cause. The county vacillated between claiming Fauth was terminated because she was unqualified and not because of a disability, and claiming she was removed because of a mental disability. After insisting Fauth was terminated for cause, the county applied for her involuntary disability retirement, even though the county had previously declared Fauth did not have a disability and technically Fauth was no longer a county employee. As the *Haywood* court explained, "Haywood's firing for cause constituted a complete severance of the employer-employee relationship, thus eliminating a necessary requisite for disability retirement—the potential reinstatement of his employment relationship with the District if it ultimately is determined that he no longer is disabled." (*Haywood, supra,* 67 Cal.App.4th at p. 1297.)

Here, the county has, improperly, simultaneously taken two incompatible employment actions removing Fauth from her job. By doing so, the county has left Fauth subject both to involuntary disability retirement and to termination for cause. In the event the county's application for disability retirement is

successfully appealed and ultimately rejected, Fauth will remain terminated for cause. Fauth is thus entitled to appeal both actions in the separate forums created specifically for challenging each employment action.

The county in the instant case fails to cite any authority for the proposition that, when the county both terminates an employee for cause and applies for involuntary disability retirement, the disability retirement nullifies the termination for cause, when an appeal of the disability retirement remains possible or is pending. There being no supporting authority, we conclude that until the involuntary disability retirement becomes final, with no possibility of being set aside, Fauth's termination for cause remains in effect, unless expressly withdrawn, and Fauth is entitled to an MOU appeal hearing.

Because Fauth remains terminated for cause and there was no evidence of a final determination as to the county's disability retirement application before the trial court when it ruled on Fauth's writ petition, we conclude the trial court correctly ruled Fauth was entitled to an MOU appeal hearing, assuming her termination is encompassed by article XII of the MOU, as found by the trial court.

■ The county asserts that the county was required to remove Fauth from her job because she did not meet the statutory minimum standards to remain a peace officer under sections 1020 to 1041. Section 1031 requires peace officers to meet certain specified standards, including being "free from any physical, emotional, or mental condition that might adversely affect the exercise of the powers of a peace officer." (§ 1031, subd. (f).) In addition, the POST[5] regulations state that peace officer applicants must be judged to be free from job-relevant psychopathology, including personality disorders.

But Fauth is not arguing that she is entitled to reinstatement regardless of whether she has a job-relevant psychopathology or is unqualified under the POST guidelines. She is only arguing that she is entitled to an MOU appeal hearing to determine whether her termination for cause was proper and based on good cause.

The county argues Fauth's interpretation of the MOU would allow the county and Fauth to commit illegal acts, in violation of sections 1026 and

[5] "POST is a state-funded organization designed to insure professional standards in law enforcement. Penal Code section 13500 et seq. describes POST's role in setting standards and guidelines pertinent to the selection and training of peace officers." (*Diffey v. Riverside County Sheriff's Department* (2000) 84 Cal.App.4th 1031, 1034 [101 Cal.Rptr.2d 353], disapproved on other grounds in *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031 [130 Cal.Rptr.2d 662, 63 P.3d 220]; see also Pen. Code, § 13510.)

1027. Fauth would be permitted to remain in her peace officer position without satisfying minimum statutory criteria, such as being qualified to carry a gun.

Sections 1026 and 1027 are inapplicable. Section 1026 provides: "Every person who exercises the duties of any office in violation of the provisions of this article *relative to oaths*, and every person who knowingly *appoints to office a person* ineligible by reason of the provisions of this article relative to oaths, is guilty of a felony." (Italics added.) The instant matter does not involve the county or any of its officers violating oaths or appointing a person to an office.

Section 1027 provides: "Every person who exercises the duties of any employment in violation of the provisions of this article *relative to oaths*, and every person who knowingly employs a person ineligible by reason of the provisions of this article *relative to oaths*, is guilty of a misdemeanor." (Italics added.) The instant matter does not involve the violation of oaths. In addition, Fauth is not construing the MOU as mandating employment in violation of any employee oath.

Citing section 21150 and *Lazan v. County of Riverside* (2006) 140 Cal.App.4th 453, 461 [44 Cal.Rptr.3d 394] (*Lazan*), the county further argues that Fauth and the county would have faced criminal charges if the county had not removed Fauth from her job and applied for disability retirement for her once the county became aware Fauth was unfit for duty. Section 21150, subdivision (a) provides that "[a] member incapacitated for the performance of duty shall be retired for disability . . . ." But construing the MOU as entitling Fauth to an MOU appeal hearing after being terminated for cause does not expose either Fauth or the county to criminal charges. Allowing an MOU hearing does not prevent the county from withdrawing Fauth's termination for cause and/or from immediately removing Fauth from her job upon a finding of unfitness for duty, placing her on administrative leave, and applying for her involuntary disability retirement.

*Lazan, supra*, 140 Cal.App.4th 453, also does not support the county's criminal liability contention. Unlike the employee in *Lazan*, plaintiff is not seeking disability retirement, and the county delayed over a year and a half before applying for it while having already placed Fauth on administrative leave and terminating her employment for cause. Here, unlike in *Lazan*, Fauth is claiming she is entitled to an MOU appeal hearing to establish there was no good cause for her termination. While *Lazan* stands for the proposition the county has a ministerial duty to apply for disability retirement if an officer is believed to be disabled, this duty to apply for disability retirement is not impeded by allowing Fauth to appeal separately her dismissal under the MOU.

The county argues its interpretation of the MOU does not violate Fauth's due process rights because she is afforded appeal rights under section 21156, with regard to disability retirement. But as discussed above, the disability retirement proceedings concern an entirely different employment action in which Fauth's employment relationship is not severed. Fauth has a contractual right to an MOU appeal hearing so long as her employment relationship with the county remains severed due to her being terminated for cause, and she has not been reinstated.

The county argues that Fauth's construction of the MOU would allow Fauth to continue working while she awaits and receives an MOU appeal hearing in contravention of the public's interest in immediately removing and retiring a psychologically unfit officer from employment. This argument is unpersuasive since all that Fauth is insisting upon is an appeal hearing on the county's termination of her employment. Meanwhile, the county may place Fauth on administrative leave pending a final determination of the disability retirement proceeding.

### 5. Applicability of Article XII to Fauth's Employment Termination

The county argues the trial court erred in finding that Fauth is entitled to an MOU appeal hearing under article XII. We disagree.

Article XII of the MOU provides the procedures for appealing dismissal from employment. Section 8 defines "disciplinary action" as "dismissal, demotion, reduction in compensation, suspension, or any other action taken for disciplinary reasons, that directly affects the wages, hours, or working conditions of a permanent employee."

Section 2.n of article XII lists various grounds for finding good cause for dismissal of such action, including: "Failure to maintain . . . professional qualifications, . . . or eligibility required for the employee's classification when the failure of the employee to maintain such requirements adversely affects the employee's ability to perform their job or the performance of the department."

The county argues construing the MOU as covering Fauth's separation as disciplinary contradicts the plain language of the MOU and PERS law (§ 21150 et seq.). Specifically, the county argues Fauth mischaracterizes her separation from her job as disciplinary action falling under article XII. The county asserts that article XII does not apply because Fauth was not ultimately removed from her job for disciplinary reasons but because she was placed on disability retirement, which is nondisciplinary.

As discussed above, Fauth's involuntary disability retirement is a separate and distinct employment action, which does not prevent Fauth from receiving an MOU hearing under article XII for her dismissal. In addition, article XII encompasses Fauth's dismissal, as discussed below.

■ The MOU, entered into between the county and the RSA on behalf of employees such as Fauth, is "a mutually agreed covenant, a labor management contract. . . . [¶] . . . [A]ll modern California decisions treat labor-management agreements . . . as enforceable contracts (see Lab. Code, § 1126) which should be interpreted to execute the mutual intent and purpose of the parties." (*Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 339 [124 Cal.Rptr. 513, 540 P.2d 609].) " 'Thus, " '[w]e are free to make our own independent interpretation of the terms of the contract and its application to the instant dispute.' [Citation.]" [Citation.]' [Citation.] Likewise, because we must interpret the MOU to ' "execute the *mutual* intent and purpose of the parties[,]" ' we independently review the appellate record. [Citation.]" (*Service Employees Internat. Union v. City of Los Angeles* (1994) 24 Cal.App.4th 136, 143–144 [29 Cal.Rptr.2d 357].)

■ This court must thus "interpret the intent and scope of the agreement by focusing on the usual and ordinary meaning of the language used and the circumstances under which the agreement was made." (*Lloyd's Underwriters v. Craig & Rush, Inc.* (1994) 26 Cal.App.4th 1194, 1197–1198 [32 Cal.Rptr.2d 144].) In doing so, we conclude article XII encompassed the county's termination of Fauth based on the ground she was unqualified to carry a gun as required in the performance of her job duties. Fauth's termination thus fell within the list of conduct in article XII defined as good cause for dismissal, which was subject to review under article XII. The county terminated Fauth pursuant to section 2.n of article XII. As a consequence, Fauth was entitled to an MOU appeal hearing on her dismissal.

The county argues that it terminated Fauth because of her mental disability, which was the underlying reason for Fauth's not qualifying to carry a gun. As a consequence, she could not be terminated for cause under article XII and the county ultimately retired her for disability. We agree it would be improper for the county to terminate Fauth for cause based on mental disability (§ 21153), but that is what the county initially did; therefore, since the county has not reinstated her and there is no evidence in the record establishing a final, unchallenged determination of disability retirement, Fauth remains entitled to an MOU appeal hearing challenging her termination for cause under article XII.

### 6. Fauth's Cross-appeal

In Fauth's cross-appeal, Fauth contends the trial court erred in denying her relief on the second cause of action alleging the county violated her rights under POBRA (§ 3300 et seq.) by refusing to engage in MOU appeal proceedings under article XII. In addition to requesting a hearing, Fauth seeks recovery of a $25,000 civil penalty against the county and attorney's fees.

■ POBRA provides "a number of basic rights and protections which must be accorded individual public safety officers by the public agencies which employ them. [Fn. omitted.] One of the basic protections is the right to an administrative appeal of punitive actions." (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 679 [183 Cal.Rptr. 520, 646 P.2d 191] (*White*).)

■ Section 3304, subdivision (b) provides: "No *punitive action* . . . shall be undertaken by any public agency against any public safety officer . . . without providing the public safety officer with an opportunity for administrative appeal." (Italics added.) Section 3309.5, subdivision (d)(1) provides for "injunctive or other extraordinary relief to remedy the violation and to prevent future violations . . . ."

An MOU appeal hearing satisfies these POBRA provisions. Fauth's POBRA request for a court order that she receive an administrative appeal hearing on her dismissal under POBRA is therefore moot as a consequence of this court's holding that Fauth is entitled to appeal her termination under article XII of the MOU. A determination, however, as to whether the county violated POBRA, for purposes of Fauth recovering damages under section 3309.5, is not moot.

Subdivision (e) of section 3309.5 states: "In addition to the extraordinary relief afforded by this chapter, upon a finding by a superior court that a public safety department, its employees, agents, or assigns, with respect to acts taken within the scope of employment, *maliciously violated any provision of this chapter with the intent to injure the public safety officer*, the public safety department shall, for each and every violation, be liable for a civil penalty not to exceed twenty-five thousand dollars ($25,000) to be awarded to the public safety officer whose right or protection was denied and for reasonable attorney's fees as may be determined by the court. If the court so finds, and there is sufficient evidence to establish actual damages suffered by the officer whose right or protection was denied, the public safety department shall also be liable for the amount of the actual damages."

Fauth alleges in her POBRA cause of action that the county refused to provide her with a posttermination administrative appeal hearing under section 3304, subdivision (b), and has committed this same violation against many other employees. The county thus maliciously denied Fauth's right to such a hearing, knowing Fauth was entitled to a hearing under POBRA.

The county argues POBRA is inapplicable because the county retired Fauth for disability, and Fauth's removal from her job was not disciplinary or punitive. As discussed above, the county was required to provide Fauth with an MOU appeal hearing on her dismissal in accordance with her due process rights, regardless of the county's applying for Fauth's involuntary disability retirement after Fauth's dismissal.

The county's argument that POBRA is inapplicable because Fauth's termination was not disciplinary or punitive also lacks merit under *White, supra,* 31 Cal.3d at page 680. *White* involved reassignment of a sheriff's deputy to a lower paying position because of a deficiency in performance. (*Id.* at p. 678.) The issue was whether the employee was entitled to an administrative appeal under POBRA. (31 Cal.3d at p. 678.)

 In discussing the meaning of punitive or disciplinary action under section 3304, subdivision (b), the court in *White* stated that the Legislature intended in POBRA "to provide the right of administrative appeal to a peace officer against whom disciplinary action is taken, and that the Legislature viewed 'dismissals,' 'demotions,' 'suspensions,' 'reductions in salary' and 'written reprimands' to be per se disciplinary in nature." (*White, supra,* 31 Cal.3d at p. 683.) "It matters not in the least whether the reason for the punitive action is misconduct . . . , or 'incompetency,' or 'inefficiency' [citation]." (*Id.* at p. 682, citations omitted.)

In the instant case, the trial court denied Fauth POBRA relief on the ground her termination was not punitive. Under *White,* Fauth's termination was per se punitive. (*White, supra,* 31 Cal.3d at pp. 681–683.) The trial court thus erred in rejecting Fauth's claim for POBRA relief based on the finding Fauth's dismissal was not punitive. The county's rejection of Fauth's request for an MOU appeal hearing constituted a violation of POBRA.

Because the record indicates the trial court did not reach the issue of whether there was malice, which is necessary in order to recover POBRA relief under section 3309.5, this matter is remanded to the trial court for factual findings as to whether the county maliciously violated POBRA by refusing to provide Fauth with a posttermination hearing on her dismissal.

## 7. Disposition

For the reasons set forth above, the trial court's ruling denying Fauth's second cause of action for POBRA relief is reversed and the case remanded for findings as to whether Fauth is entitled to recovery under section 3309.5. The judgment is affirmed as to the first and third causes of action of Fauth's writ petition. Fauth is awarded her costs on appeal.

Ramirez, P. J., and King, J., concurred.

The petition of defendants and appellants for review by the Supreme Court was denied July 29, 2009, S173289. Corrigan, J., did not participate therein.