[No. E050596. Fourth Dist., Div. Two. Feb. 8, 2011.]

RIVERSIDE SHERIFFS' ASSOCIATION et al., Plaintiffs and Respondents,
v.
COUNTY OF RIVERSIDE, Defendant and Appellant.

22

**COUNSEL**

The Zappia Law Firm, Edward P. Zappia and Brett M. Ehman for Defendant and Appellant.

Hayes & Cunningham and Dennis J. Hayes for Plaintiffs and Respondents.

**OPINION**

**KING, J.—**

## I. INTRODUCTION

Plaintiff Beatrice Sanchez was employed by the County of Riverside (the County) probation department as a probation corrections officer II. The County terminated her employment because it determined she had a medical condition that prevented her from performing the essential functions of her position, with or without reasonable accommodation. The County then denied her request for an administrative appeal of her termination pursuant to the memorandum of understanding (MOU) between the County and the Riverside Sheriffs' Association (RSA) law enforcement unit on the ground she was terminated, not for "disciplinary reasons" (MOU, art. XII), but based solely on her medical condition. The County later rescinded Sanchez's termination and applied to the California Public Employees' Retirement System (CalPERS) for disability retirement benefits on her behalf (Gov. Code, § 21153),[1] retroactive to October 25, 2008, the first day Sanchez was on "unpaid status" with the County. Sanchez notified the County she intended to appeal her disability retirement. (§ 21156.)

Sanchez also petitioned the trial court for a writ of mandate directing the County to process her request for an MOU appeal of her termination. The County opposed the petition on the grounds it had rescinded Sanchez's termination and her "exclusive remedy" was to appeal her disability retirement. The trial court granted the petition on the ground Sanchez was denied wages and benefits of her employment, notwithstanding the rescission of her termination. The County appeals, claiming the petition was erroneously granted because Sanchez's termination had been rescinded and her "exclusive remedy" was to appeal her disability retirement.

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

We affirm. Even though the County purported to rescind its termination of Sanchez's employment and applied to CalPERS for disability retirement benefits on her behalf, substantial evidence showed the County denied Sanchez wages and other benefits of her employment from and after October 25, 2008. This was inconsistent with treating Sanchez as a nonterminated County employee who was eligible for disability retirement benefits from and after October 25, 2008. Sanchez was entitled to an MOU hearing, not of her termination per se, but of the County's "disciplinary actions" denying her wages and benefits from and after October 25, 2008.

## II. FACTS AND PROCEDURAL HISTORY

In 2007, Sanchez was employed by the County probation department as a probation corrections officer II and, by virtue of her employment, was a member of the public safety unit of the RSA. In December 2007, Sanchez's supervisor informed her she would be required to work the "graveyard shift" as part of the regular rotation of probation corrections officers. Thereafter, Sanchez gave her supervisor a letter from her physician, Dr. Stephen Steele. The letter stated Sanchez had lupus, a chronic autoimmune disease, and restricted her from (1) working more than eight hours each day, (2) lifting more than 15 pounds, (3) standing for prolonged periods, and (4) working the graveyard shift.

After December 2007, the County initiated an interactive process in order to determine whether Sanchez's medical condition could be reasonably accommodated. Sanchez advised the County she was not interested in any of the positions suggested to her during the interactive process. At some point, the County determined Sanchez could not perform the essential functions of her position, with or without reasonable accommodation. Thereafter, in October 2008, Sanchez was taken off duty from her position as a probation corrections officer. Then, on April 6, 2009, the County notified Sanchez of its intention to terminate her employment in a letter captioned "Notice of Intent to Release from Employment."

The April 6 letter advised Sanchez that the County had determined she could not perform the essential functions of her position, with or without reasonable accommodation, and that the County "recognize[d]" she was no longer able to work for the County "only because of" her "present medical condition." The April 6 letter also stated that Sanchez's termination from her employment was "not being proposed for disciplinary reasons," and, there-fore, "the provisions of Articles XI and XII" of the MOU did not apply.[2] The April 6 letter gave Sanchez an opportunity, until April 16, to respond orally

_____

[2] The MOU was in effect from February 1, 2006, to January 31, 2009.

or in writing to the County's proposed termination of her employment, and stated that a final decision on her termination would be made after April 16. Finally, the April 6 letter advised Sanchez that if she planned to "file for disability or service retirement" she could contact the County or CalPERS "for assistance or information."

On April 23, the County notified Sanchez by letter that her employment was terminated effective April 23. The April 23 letter emphasized that Sanchez had "engaged in no culpable behavior" and "only [her] medical condition" prevented her from resuming her "full duties" with the probation department. The April 23 letter also acknowledged the County's receipt of an April 8 letter from Sanchez's counsel, but disagreed with her counsel's assertion that her medical restrictions could be reasonably accommodated or that she was entitled to appeal her termination pursuant to the MOU. On April 24, Sanchez demanded reinstatement to her former position and again requested that the County process an MOU appeal of her termination.

On May 19, 2009, the County "rescinded" its April 23 termination of Sanchez's employment and, on this appeal, claims it never "processed" her termination. The County submits its rescission of Sanchez's termination was prompted by this court's May 18, 2009, decision in *Riverside Sheriffs' Assn. v. County of Riverside* (2009) 173 Cal.App.4th 1410 [93 Cal.Rptr.3d 832] (Fourth Dist., Div. Two) (*RSA-Fauth*) and, in accordance with *RSA-Fauth*, Sanchez is not entitled to an MOU appeal of her *rescinded* termination.

In *RSA-Fauth*, Leisha Fauth, a senior investigator with the office of the district attorney, was terminated "for cause" after the County determined she was no longer psychologically fit to carry a gun or perform her investigator duties. (*RSA-Fauth, supra*, 173 Cal.App.4th at pp. 1414–1416.) Fauth filed a notice of appeal with the County, challenging her termination pursuant to article XII of the MOU and demanding reinstatement. (*Id.* at pp. 1416–1417.) The County rejected Fauth's request for an MOU appeal of her termination on the ground she was not terminated for a disciplinary reason but because she could no longer meet the requirements of her position. (*Ibid.*) Then, several months after Fauth was terminated, the County applied to CalPERS to place Fauth on disability retirement, claiming she had a psychiatric disability and was therefore mentally or physically incapacitated within the meaning of the CalPERS law. (*Id.* at p. 1417; § 20000 et seq.) Thus, the County's reasons for terminating Fauth's employment were essentially the same as its reasons for placing her on involuntary disability retirement.

We concluded in *RSA-Fauth* that, though Fauth was indisputably entitled to appeal her involuntary disability retirement under the CalPERS law, this did not bar her right to an MOU appeal of her termination. (*RSA-Fauth, supra*,

173 Cal.App.4th at p. 1419.) We explained that "[t]ermination for cause and involuntary disability retirement are two distinct, incompatible means of removing an employee from a job," and "must be appealed in two entirely different forums, with the procedures under the MOU being contractual and the procedures for disability retirement being statutory. The two means of removal cannot coexist because once an employee is terminated for cause, the employment relationship is severed and [disability] retirement benefits are no longer possible." (*Ibid.*) We further explained that the County had "improperly, simultaneously taken two incompatible employment actions" against Fauth, subjecting her to both involuntary disability retirement and termination for cause. Even if Fauth successfully appealed the County's application for her disability retirement, she would still be terminated for cause. (*Id.* at pp. 1420–1421.)

In addition, the County cited no authority for the proposition it was advancing in *RSA-Fauth*, namely, that "when the county both terminates an employee for cause and applies for involuntary disability retirement, the disability retirement nullifies the termination for cause, when an appeal of the disability retirement remains possible or is pending." (*RSA-Fauth, supra*, 173 Cal.App.4th at p. 1421.) We therefore concluded that, "*until the involuntary disability retirement becomes final, with no possibility of being set aside, Fauth's termination for cause remains in effect, unless expressly withdrawn, and Fauth is entitled to an MOU appeal hearing.*" (*Ibid.*, italics added.)

As indicated, the County rescinded its April 23 termination of Sanchez on May 19, one day after *RSA-Fauth* was decided. Then, on July 7, 2009, the County submitted a disability retirement application to CalPERS on behalf of Sanchez. The application stated that Sanchez's last day in "paid status" was October 24, 2008, and her retirement was "effective October 25, 2008." In November 2009, Sanchez notified the County that she intended to appeal its application for her disability retirement.

In September 2009, Sanchez petitioned the trial court for a writ of mandate or order directing the County to process her request for an administrative appeal of her April 23 termination pursuant to the terms of the MOU (first cause of action) and the Public Safety Officers Procedural Bill of Rights Act (the POBRA) (§ 3300 et seq.) (second cause of action). In her petition, Sanchez argued she was entitled to a determination on an MOU appeal of whether she was properly terminated from her employment because she was "physically or mentally unfit to perform her assigned duties," with or without reasonable accommodation. (MOU, arts. XI, § 2, XII, § 1(A).) She argued she was able to work four of the five available shifts for probation corrections

officers, all shifts except the graveyard shift, and it was "no burden" on the County to provide this accommodation to her. In her supporting declaration, she claimed she had received no wages or benefits since her termination.

In its written opposition, filed in December 2009, the County argued Sanchez was not entitled to an MOU appeal of her termination because it had been rescinded, and her "exclusive remedy" was to appeal her disability retirement. The County claimed it had never "processed" Sanchez's termination, and that Sanchez had received short-term disability benefits through November 2009, and health insurance through September 2009, benefits available only to County employees.

In reply, Sanchez claimed the County's rescission of her termination was merely a "paper rescission" because she "was not reinstated, or in the alternative, placed on paid administrative leave. Nor was [she] made whole for wages and benefits that would have accrued but for her termination." In a supplemental declaration, she claimed she had not received "any wages or benefits" she was entitled to receive pursuant to the MOU since the time of her termination, including her regular wages, sick leave, vacation leave, and health insurance benefits. In August 2009, the County notified her she had lost her group health insurance coverage, and sent her an application to continue her health insurance coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA; Pub.L. No. 99-272 (Apr. 7, 1986) 100 Stat. 82). She completed and returned the COBRA application.

In her reply papers, Sanchez again argued she was entitled to an MOU hearing to determine "whether she should be reinstated and made whole for the wages and benefits [she] would have accrued but for the adverse action taken against her." She admitted she would *not* be entitled to an MOU hearing if the County (1) rescinded her termination; (2) made her whole for all the wages and benefits she would have accrued but for her termination or indefinite suspension without pay; and (3) either reinstated her to her former position or placed her on administrative leave pending the disposition of the appeal hearing on her involuntary disability retirement.

Following a hearing on January 29, 2010, the trial court granted Sanchez's writ petition. Specifically, the court concluded Sanchez was entitled to a posttermination administrative appeal hearing pursuant to article XII of the MOU and section 3304, subdivision (b) of the POBRA, and the County violated the MOU and the POBRA in failing to provide Sanchez with that hearing.

In its order granting the petition, the court explained: "Although the County issued Sanchez a letter rescinding her termination, she was not reinstated to her position, or in the alternative, placed on administrative leave with pay; nor was she made whole for the wages and benefits that would have accrued but for her termination. The holding in [RSA-Fauth] is on point and controlling. The fact that Sanchez received a letter of rescission, but the employee in [RSA-Fauth] did not, is a distinction without a difference as Sanchez was denied the benefits of her employment."

## III. DISCUSSION

The County claims the trial court erred as a matter of law in concluding Sanchez was entitled to an administrative appeal of her April 23 termination pursuant to the MOU and section 3304, subdivision (b) of the POBRA. The County argues that, because it rescinded Sanchez's termination and applied for disability retirement benefits on her behalf, Sanchez is still a County employee and an administrative appeal from her rescinded termination is "factually moot." Sanchez's exclusive remedy, the County argues, is to appeal her disability retirement. For the reasons we explain, we conclude the petition was properly granted.

### A. *Standard of Review*

In reviewing the judgment following the order granting Sanchez's writ petition, we defer to the trial court's findings of fact, express or implied, provided substantial evidence supports them. (*Lazan v. County of Riverside* (2006) 140 Cal.App.4th 453, 458 [44 Cal.Rptr.3d 394] [Fourth Dist., Div. Two].) We independently resolve all questions of law, however. (*O'Connor v. State Teachers' Retirement System* (1996) 43 Cal.App.4th 1610, 1620 [51 Cal.Rptr.2d 540].) Questions of law include the interpretation of statutes and the application of the law to undisputed facts. (*RSA-Fauth, supra,* 173 Cal.App.4th at p. 1418.)

### B. *Overview of Pertinent Legal Principles*

#### 1. *Disability Retirement*

█ Terminating an employee and applying to place the same employee on disability retirement are mutually exclusive, inconsistent means of removing the employee from his or her employment. (*RSA-Fauth, supra,* 173 Cal.App.4th at p. 1419; § 21153.)[3] As explained in *Haywood v. American*

---

[3] Section 21153 provides: "Notwithstanding any other provision of law, an employer may not separate because of disability a member otherwise eligible to retire for disability but shall

*River Fire Protection Dist.* (1998) 67 Cal.App.4th 1292, 1305 [79 Cal.Rptr.2d 749]: "[T]he Legislature has precluded an employer from terminating an employee because of medical disability if the employee would be otherwise eligible for disability retirement. (§ 21153.) In such a case, the employer must instead apply for the disability retirement of the employee. (*Ibid.*) In addition, while termination of an unwilling employee for cause results in a complete severance of the employer-employee relationship (§ 19583.1), disability retirement laws contemplate the potential reinstatement of that relationship if the employee recovers and no longer is disabled. Until an employee on disability retirement reaches the age of voluntary retirement, an employer may require the employee to undergo a medical examination to determine whether the disability continues. (§ 21192.) And an employee on disability retirement may apply for reinstatement on the ground of recovery. (*Ibid.*) If an employee on disability retirement is found not to be disabled any longer, the employer may reinstate the employee, and his disability allowance terminates. (§ 21193.)"

Section 21153 imposes a ministerial duty on an employer to apply for disability retirement on behalf of an employee if the employer "believes" the employee is disabled and the employee is "otherwise eligible to retire for disability." (*Lazan v. County of Riverside, supra,* 140 Cal.App.4th at pp. 459–460.) The disability retirement laws "are intended to alleviate the harshness that would accompany the termination of an employee who has become medically unable to perform his duties. (§ 20001)." (*Haywood v. American River Fire Protection Dist., supra,* 67 Cal.App.4th at p. 1304.)

CalPERS is statutorily required to retire a local safety member, other than a school safety member, for disability if the governing body of the contracting agency which employs the member determines the member is "incapacitated physically or mentally for the performance of his or her duties and is eligible to retire for disability," unless the member is eligible for and timely applies for a service retirement. (§ 21156, subd. (a)(1); see § 21154.) The member may appeal the disability retirement determination of the governing body to the Office of Administrative Hearings (§ 21156, subd. (b)(2)), and the hearing on the appeal is to be conducted before an administrative law judge of the Office of Administrative Hearings (*ibid.*; see *Langan v. City of El Monte* (2000) 79 Cal.App.4th 608, 615–617 [94 Cal.Rptr.2d 254]).

---

apply for disability retirement of any member believed to be disabled, unless the member waives the right to retire for disability and elects to withdraw contributions or to permit contributions to remain in the fund with rights to service retirement as provided in Section 20731."

### 2. The MOU

The MOU provides that any employee may appeal "any disciplinary action" taken against the employee (MOU, art. XII, § 5), and defines "disciplinary action" as "dismissal, demotion, reduction in compensation, suspension, or any other action taken for disciplinary reasons, that directly affects the wages, hours, or working conditions of a permanent employee" (MOU, art. XII, § 1.A). Acts constituting good cause for dismissal include "[p]hysical or mental unfitness to perform assigned duties." (MOU, art. XI, § 2.K.) An MOU appeal is an evidentiary hearing conducted before a neutral arbitrator or hearing officer selected by the parties from a panel of arbitrators. (MOU, art. XII, § 8.) If the hearing officer finds the order of discharge should be rescinded, the employee is to be reinstated to a position in the classification held immediately prior to discharge and shall receive backpay and benefits for the entire period between the discharge and reinstatement. (MOU, art. XII, § 8.I.5.)

### 3. The POBRA

■ The POBRA affords "a number of basic rights and protections" to public safety officers by the public agencies which employ them. (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 679 [183 Cal.Rptr. 520, 646 P.2d 191].) These include the right to an administrative appeal of "punitive actions" taken against the public safety officer by his or her public agency employer. (*Ibid.*) The POBRA states: "No *punitive action*, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency against any public safety officer . . . without providing the public safety officer with an opportunity for administrative appeal." (§ 3304, subd. (b), italics added.) Administrative appeals under the POBRA are to be *conducted in accordance with rules and procedures adopted by the local public agency.* (§ 3304.5.) An employee's MOU appeal of a termination, dismissal, reduction in salary, or other disciplinary action generally satisfies the employee's right to an appeal of identical "punitive actions" under the POBRA. (See *RSA-Fauth, supra,* 173 Cal.App.4th at p. 1425.) Punitive actions including, but not limited to, dismissals and reductions in salary are generally considered " 'per se disciplinary in nature.' " (*Id.* at p. 1426; see *White v. County of Sacramento, supra,* at p. 683.)

### C. Analysis

The County acknowledged it believed Sanchez was medically disabled when it placed her on "unpaid status" effective October 25, 2008, and later terminated her employment on April 23, 2009. Indeed, the County's April 6 letter notifying Sanchez of its intent to terminate her stated she was not being

terminated for "disciplinary reasons" (MOU, art. XII, § 5), or reasons that, in the County's view, would entitle her to an MOU appeal of her termination, but because it believed her "present medical condition" rendered her incapable of performing the essential functions of her job, with or without reasonable accommodation (MOU, art. XI, § 2.K. [good cause for dismissal includes "[p]hysical or mental unfitness to perform assigned duties"]).

The County also concedes it never should have terminated Sanchez because it consistently believed, or at least should have known, that she was eligible for disability retirement. (*RSA-Fauth, supra,* 173 Cal.App.4th at pp. 1419–1420 [termination and disability retirement are mutually exclusive].) The County submits, however, that it corrected its erroneous termination of Sanchez's employment on May 19, 2009, the day after this court issued its decision in *RSA-Fauth,* by rescinding her termination and later applying for disability retirement benefits on her behalf, retroactive to October 25, 2008. The County claims it never "processed" Sanchez's termination, which was in effect for less than one month. Thus, the County argues, Sanchez was not terminated or "dismissed" for "disciplinary reasons" within the meaning of section 5, article XII of the MOU; she is therefore not entitled to an MOU or POBRA appeal of her rescinded termination; and her exclusive remedy is to appeal her disability retirement to the Office of Administrative Hearings.

The problem with the County's argument is that the trial court determined and substantial evidence shows that Sanchez was denied wages and other benefits of her employment *that she would not have been denied had the County treated her as a nonterminated employee eligible for disability retirement at all times from and after October 25, 2008.* The County does not dispute it placed Sanchez on "unpaid status" effective October 25, 2008. After that date, Sanchez apparently used accrued vacation leave and sick time and, for some unspecified period, received short-term disability benefits, a benefit available only to County employees. She was not, however, allowed to accrue any additional vacation leave or sick time after October 25, 2008. Around September 2009, the County notified Sanchez her health insurance coverage had terminated, and Sanchez applied to extend her health insurance benefits pursuant to COBRA. Effective November 1, 2009, Sanchez applied for unemployment insurance benefits and was receiving unemployment insurance benefits in January 2010, shortly before the January 29 hearing on her writ petition.

As noted, the disability retirement laws "are intended to alleviate the harshness that would accompany the termination of an employee who has become medically unable to perform his duties. (§ 20001)." (*Haywood v. American River Fire Protection Dist., supra,* 67 Cal.App.4th at p. 1304.)

Here, however, the County did little to nothing to protect Sanchez from the harshness, in terms of lost wages and benefits, that accompanied her placement on "unpaid status" effective October 25, 2008, and her subsequent termination. In addition, at the time of the January 29, 2010, hearing on Sanchez's writ petition, CalPERS had apparently not approved the County's involuntary disability retirement application on behalf of Sanchez. Nor is there any indication in the record when, if ever, that application was approved. In any event, by the time of the hearing on her writ petition, Sanchez had been deprived of wages and benefits for well over one year *and* had yet to receive *any* disability retirement benefits.

■ We agree with Sanchez that the County's actions in depriving her of her wages and other benefits of her employment constituted "disciplinary action" within the meaning of the MOU (MOU, art. XII, § 5) and "punitive action" within the meaning of the POBRA (§ 3304, subd. (b)). By placing Sanchez on "unpaid status" from and after October 25, 2008, the County effectively terminated Sanchez due to her medical condition, and in so doing subjected her to the harshness the disability retirement laws are intended to alleviate. Though the County argues and we agree that it would have been inappropriate to return Sanchez to her former position as a probation corrections officer, given the County's belief she was eligible for disability retirement, the County does not explain why it did not place Sanchez on paid administrative leave, at least pending CalPERS's approval of its disability retirement application, if not pending a final decision on Sanchez's appeal of that application, if approved. That would have alleviated the harshness of placing Sanchez on "unpaid status" or terminating her effective October 25, 2008. Sanchez is entitled to an MOU appeal, not of her April 23, 2009, termination, which has been rescinded, but of the County's adverse, "disciplinary" or "punitive" actions in denying her the wages and other benefits of her employment from and after October 25, 2008. (MOU, art. XII, § 5; § 3304, subd. (b).)

This court's decision in *RSA-Fauth, supra,* 173 Cal.App.4th 1410 does not assist the County's argument. In *RSA-Fauth,* we affirmed a judgment ordering the County to process Fauth's MOU appeal of her termination from her County employment. *RSA-Fauth* is not distinguishable because, as the County argues, the County rescinded its termination of Sanchez but did not rescind its termination of Fauth. Given that Sanchez was "denied the benefits of her employment," the County's rescission of Sanchez's termination was, as the trial court called it, "a distinction without a difference," or, as Sanchez called it, "a 'paper' rescission."[4]

---

[4] Sanchez and the RSA have requested that we take judicial notice of court records in another case involving the County and another County employee. (Evid. Code, §§ 452, subd. (d), 459.) We decline to do so because the records are irrelevant to the issues presented

## IV. DISPOSITION

The judgment is affirmed. Sanchez and the RSA shall recover their costs on this appeal.

McKinster, Acting P. J., and Richli, J., concurred.

on this appeal. (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [31 Cal.Rptr.2d 358, 875 P.2d 73], overruled on other grounds in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276 [63 Cal.Rptr.3d 418, 163 P.3d 106].)