Filed 4/23/15  Riverside Sheriffs' Assn. v. County of Riverside CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

RIVERSIDE SHERIFFS' ASSOCIATION et al.,

    Plaintiffs and Appellants,

v.

COUNTY OF RIVERSIDE et al.,

    Defendants and Appellants.

E057647

(Super.Ct.No. RIC1116174)

OPINION

APPEAL from the Superior Court of Riverside County.  Gloria Trask, Judge.

Affirmed.

Hayes & Cunningham, Dennis J. Hayes, Raquel A. Ortega and Gena B. Burns for Plaintiffs and Appellants.

The Zappia Law Firm, Edward P. Zappia and Anna Zappia for Defendants and Appellants.

1

I

INTRODUCTION

This is the second appeal in this employment termination matter. In the first appeal, brought by plaintiffs and appellants Leisha Fauth and the Riverside Sheriffs' Association (collectively, plaintiffs), this court held Fauth was entitled to an administrative appeal hearing on her employment termination under a memorandum of understanding (MOU) between Riverside County and Riverside Sheriff's Association (RSA). (*Riverside Sheriffs' Ass'n. v. County of Riverside* (2009) 173 Cal.App.4th 1410, 1414 (*Fauth I*).) After remand, Fauth received a MOU appeal hearing, with the arbitrator issuing an opinion and award, finding Fauth was terminated for cause, and awarding Fauth back pay. Plaintiffs filed a petition for writ relief, objecting to the arbitration finding Fauth was terminated for cause.

Plaintiffs appeal the trial court's order denying in part plaintiffs' petition for a writ of mandate. Plaintiffs contend the arbitrator erred in finding defendants and appellants Riverside County and its board of supervisors, district attorney, and interim county executive officer (collectively, the County) terminated Fauth for just cause. Plaintiffs argue the County wrongfully terminated Fauth's employment because she was disabled, when the County was required to apply for disability retirement for Fauth under Government Code section 21153.[1]

---

[1] Unless otherwise noted, all statutory references are to the Government Code.

We conclude the arbitrator did not err in finding Fauth was terminated for just cause, since Fauth's appeal of involuntary disability retirement remained pending in a separate, mutually exclusive proceeding under California Public Employees' Retirement System (PERS) law. The arbitrator therefore was not required to find under section 21153 that the County wrongfully terminated Fauth, when there was cause to terminate Fauth because she could not perform her job responsibilities.

The County cross-appeals the trial court order denying its trial court cross-petition for writ of administrative mandamus, challenging the order awarding Fauth back pay.

The County contends in its cross-appeal the arbitrator exceeded his authority in finding the County violated Fauth's pretermination due process rights, because in *Fauth I*, this court affirmed the trial court's ruling denying as moot the third cause of action for pretermination writ relief. The County also argues Fauth's involuntary disability retirement is final, and the County did not violate Fauth's due process rights when it terminated her. In addition, the County argues Fauth is not entitled to back pay and, even if she is entitled to it, the trial court erred in extending back pay until the date of the arbitrator's decision on September 24, 2010. Furthermore, the County argues Fauth failed to mitigate her damages and the back pay award is excessive and illegal.

We reject the County's cross-appeal contentions and conclude the arbitrator did not exceed his authority in awarding Fauth back pay for the County's violation of her due process rights under Article XII of the MOU. We further conclude there was substantial evidence establishing that Fauth adequately mitigated her damages, and the trial court appropriately extended back pay to the date of the arbitrator's decision on September 24,

3

2010, under *Barber v. State Personnel Board* (1976) 18 Cal.3d 395, 403-404 (*Barber*). The judgment is affirmed.

II

FACTS AND PROCEDURAL BACKGROUND

Fauth began working for the Riverside County District Attorney's Office as a senior district attorney investigator in 1995. From 2000 to 2002, Fauth was disciplined and received poor job evaluations on a number of occasions. From 2002 to 2006, Fauth's job performance improved and she received approximately six commendations. In March 2006, she was promoted to senior investigator II, which is a sworn officer position requiring Fauth to carry a gun and pass a psychological fitness exam.

In May 2006, Fauth was investigated by her employer for neglecting her job duties and incompetence. She was repeatedly absent without notice and ignored scheduled investigations, forcing the County to release witnesses and pay interpreters while they waited for Fauth, who never showed up.

On June 2, 2006, Fauth's husband, Ronald Fauth, called Fauth's supervisor, Clay Hodson, Riverside County Chief of Investigations, and left a recorded telephone message. After Hodson told Fauth he had received the message, Fauth handed Hodson a 19-page letter dated June 3, 2006, from Fauth's husband. She also handed a copy of the letter to the County human resources (HR) director, Ron Komers. In addition, the letter was sent to CNN and Press Enterprise. The rambling letter discussed the Fauths' marital history, alleged that Fauth was subjected to sexual harassment, and accused County employees of engaging in inappropriate conduct at work.

4

In response to Mr. Fauth's voice-mail message and letter, and Fauth's personal delivery of the letter, Hodson requested a third-party clinical and forensic psychologist, Dr. Victoria Havassy, to review and evaluate the letter for a threat assessment. After doing so, Dr. Havassy recommended on June 8, 2006, that Fauth be placed on administrative leave pending investigation of Mr. Fauth's allegations contained in the letter. Dr. Havassy made this recommendation in order to protect the work environment and employees with whom Fauth worked. In accordance with Dr. Havassy's recommendation, Hodson immediately notified Fauth she was being placed on paid administrative leave. Dr. Havassy interviewed Fauth and administered a battery of psychological tests. Dr. Havassy concluded in a letter to Hodson, dated July 10, 2006 (Havassy letter), that "Fauth is NOT fit for duty as a Senior DA Investigator nor should she be permitted to carry a weapon."

Dr. Havassy reported in August 2006, to the County HR disability manager, Jennifer Cooper, that Dr. Havassy had conducted a thorough psychological evaluation of Fauth in order to determine her fitness for officer duty, including carrying a weapon, and concluded that Fauth was not fit nor safe to carry a weapon, and that Fauth's problems which rendered her unfit were of extended and unknown duration. Therefore Dr. Havassy concluded Fauth was unable to carry out her customary job responsibilities in a safe and professional manner.

In September 2006, the County initiated efforts to meet with Fauth and place her in an unsworn officer position that did not require her to carry a firearm. During an interactive meeting in October 2006, Fauth stated that, without more information

regarding the County's claim she was disabled, she was not willing to consider any County nonsworn officer positions. Fauth requested the County to provide her with a copy of the Havassy letter. The County told Fauth she could not have the letter until Fauth submitted a signed waiver. Fauth promptly provided a waiver.

In November 2006, the County placed Fauth on non-paid status, and in December 2006, the County told Fauth she could not have the Havassy letter because Fauth was not Dr. Havassy's client. Fauth thereafter, again, two more times in December, requested Havassy's letter and told the County she intended to obtain an independent fitness-for-duty examination.

In January 2007, the County sent Fauth a letter stating that the County had determined that she did not have an ADA[2] or FEHA[3] qualifying disability. The County also agreed to provide Fauth with a copy of the Havassy letter if Fauth would again provide a written release. On January 26, 2007, Fauth provided another release, and the County finally provided a copy of the Havassy letter on February 2, 2007.

On March 7, 2007, Hodson sent Fauth a notice that her employment was terminated, effective March 17, 2007. The notice stated that her employment termination was "not being made for disciplinary reasons," and therefore she was not entitled to a MOU hearing. Hodson further stated Fauth had not provided evidence she had any illness or disability, noting her representatives had consistently asserted she did not

---

[2] Americans with Disabilities Act (42 U.S.C. § 12101 et seq.).

[3] Fair Employment and Housing Act (§ 12940 et seq.).

consider herself disabled in any manner. The County therefore concluded Fauth was not entitled to disability retirement. Hodson stated in the termination notice that the decision to terminate Fauth's employment was based on Fauth's inability to meet qualifying standards as a senior district attorney investigator.

Fauth requested an opportunity to challenge her termination, claiming she was fit to perform her job duties. In response, the County in April 2007, informed Fauth that she was not entitled to appeal her termination under the MOU and therefore refused to schedule a MOU termination appeal hearing.

In April 2007, Fauth submitted to an independent fitness-for-duty evaluation by Dr. William Soltz, a physician selected by plaintiffs. Dr. Soltz concluded Fauth was "fit for duty and there is no reason . . . why she could not carry a gun." Dr. Soltz wrote in his report that "unfortunately her husband, unbeknownst to her, wrote a long and complicated letter to the department." In a letter on June 30, 2006, to Dr. Havassy, Fauth acknowledged she had told Dr. Havassy she had read Mr. Fauth's letter and that she also did not tell Dr. Soltz she had personally delivered the letter to Hodson.

When Dr. Soltz was later deposed in January 2009, Dr. Soltz indicated that he "didn't have any real objections to [Dr. Havassy's] conclusions" and was not sure he would have "found differently than [Dr. Havassy] at that point." Dr. Soltz further stated that he would not have found her fit for duty, had he been aware Fauth personally delivered Mr. Fauth's letter, with knowledge of its contents, and had he known she intentionally left her cell phone on at work so that Mr. Fauth could overhear her while she was at work.

7

At the arbitration hearing, Dr. Soltz stated he based his opinion that Fauth was fit for duty and fit to carry a gun on her statement to him that she did not have knowledge of Mr. Fauth's letter "being written." Dr. Soltz acknowledged that a patient's lack of candor impacts the assessment process and, had Fauth provided the nondisclosed information, he might have reached a different conclusion. Dr. Soltz concluded based on Fauth's history that she would likely experience recurring psychological issues, and he would not have recommended her for hire had he been conducting a pre-employment assessment.

In July 2007, plaintiffs filed a petition for writ of mandate to compel the County to provide Fauth with a MOU employment termination appeal hearing. The trial court granted the first cause of action of plaintiffs' writ petition, compelling compliance with Article XII of the MOU. The trial court ordered the County "to engage in the disciplinary appeals procedure regarding D.A. Investigator Fauth's termination, pursuant to Article XII of the MOU, including a post-termination administrative hearing." The trial court denied plaintiffs' second cause of action, alleging violation of the Public Safety Officers Procedural Bill of Rights Act (POBRA) (§ 3300 et seq.). The trial court also denied the third cause of action as moot, because the court granted the first cause of action. The County appealed the order (*Fauth I*).

In November 2007, the County applied for involuntary disability for Fauth based on a psychiatric disability. The County HR director, Komers, notified PERS that, after additional review of medical and other evidence, the County had determined Fauth was "incapacitated mentally or physically within the meaning of the Public Employees' Retirement Law" for performance of job duties as a senior district attorney investigator.

8

Komers further stated in his letter to PERS that Fauth's primary disability condition was psychiatric and certified her last day of paid status was January 4, 2007, with disability retirement retroactively effective on January 5, 2007. In January 2008, Fauth appealed involuntary disability retirement.

***Fauth I* Decision**

In May 2009, this court affirmed the trial court's order granting the first cause of action of Fauth's petition for a writ of mandamus. (*Fauth I*, *supra*, 173 Cal.App.4th at p. 1414.) We concluded, "Fauth was entitled to a MOU appeal hearing on her employment termination. Even though, over eight months after Fauth was terminated, the county applied for involuntary disability retirement for her, Fauth was nevertheless entitled to a MOU appeal hearing because at the time of the trial court's ruling on Fauth's writ petition, the county had not reinstated her and thus her employment relationship with the county remained severed." (*Ibid.*)

As to Fauth's cross-appeal, we concluded in *Fauth I* that the trial court erred in denying Fauth's second cause of action for relief under POBRA (§ 3300 et seq.). We therefore reversed the judgment as to the second cause of action, with directions that the trial court determine whether Fauth was entitled to POBRA relief under section 3309.5, subdivision (e). (*Fauth I*, *supra*, 173 Cal.App.4th at p. 1414.[4]) This court also affirmed as to the dismissal of the third cause of action, as moot.

---

[4] The California Supreme Court denied the County's requests for California Supreme Court review and depublication.

9

**Fauth's Federal Civil Rights Lawsuit**

While *Fauth I* was pending, Fauth sued the County in the United States District Court, Central District of California, for sexual harassment, retaliation, disability discrimination, failure to accommodate, and failure to engage in the interactive process. In June 2009, the district court granted the County's motion for summary judgment, finding Fauth had a bona fide psychological disability rendering her unfit for duty as a sworn officer. The district court stated in its judgment that the County had articulated "legitimate, non-retaliatory reasons for its decision to suspend, and eventually terminate, Plaintiff"; the County established "that its decisions were motivated by workplace safety concerns and plaintiff's inability to fulfill the requirements of her position"; Fauth "fails to establish that she was qualified for her position, with or without reasonable accommodation, at the time of any adverse employment action"; and "the County is not liable for terminating her employment once she was found unfit for duty and unfit to carry a weapon."

**Post-*Fauth I* MOU Arbitration Proceedings**

During a post-remand trial court hearing in December 2009, the trial court awarded RSA attorney fees and costs in excess of $70,000, and ordered the County to pay Fauth a $25,000 statutory penalty under section 3309.5 for maliciously denying her due process rights. The trial court stated in its order: "Based on the conduct of the County in connection with this matter, and the additional evidence presented in support of the motion, the Court finds that the County's refusal to provide Fauth with a hearing under the Peace Officers Procedural Bill of Rights Act ('POBRA') was a malicious

10

violation of the POBRA with the intent to injure Fauth.  [¶]  The County took inconsistent and incompatible positions when first terminating Fauth for cause, refusing to grant her a hearing under either the Memorandum of Understanding ('MOU') or POBRA, and then belatedly applying for a disability retirement, but without reinstating her and returning her to administrative leave pending a resolution of the subsequent application, and continuing to deny her right to a hearing despite its refusal to reinstate her and vacate the termination for cause."

On April 15, 2010, a MOU hearing was held, and on September 24, 2010, the arbitrator issued the first of two decisions in a bifurcated hearing, concluding Fauth was terminated for cause and the County violated MOU pretermination, procedural due process provisions.  The arbitrator further found that reinstatement was not the proper remedy and concluded Fauth was entitled to back pay from the date of her termination to the date of the arbitration hearing.  The arbitrator stated in his written decision:  "[RSA] also contends that because the County applied for involuntary disability retirement for [Fauth] and is therefore pursuing mutually exclusive employment actions concerning [Fauth], it should not be allowed to defend its termination action in these proceedings.  However, the Court of Appeal, which was fully briefed as to these separate ongoing employment actions, ordered that [Fauth] be afforded the instant hearing.  As such, and as one issue before the undersigned concerns the just cause propriety of [Fauth's] termination, the County is not prohibited from mounting its defenses to the instant grievance in these proceedings.  Simply put, the dispute regarding any interrelationship

11

and/or conflict involving the separate employment actions is best left to a court of competent jurisdiction for resolution."

The arbitrator issued a second decision on July 8, 2011, awarding Fauth $297,881 in back pay. This amount included the amount Fauth would have earned from March 17, 2006 through April 15, 2010, plus COBRA premium payments, accrued vacation, and interest on lost wages, offset by Fauth's interim earnings and unemployment insurance benefits.

**Petitions for Writ Relief**

In October 2011, plainfiffs filed a petition for writ of mandate (writ petition) under Code of Civil Procedure section 1085, requesting administrative mandate relief. Plaintiffs alleged that Fauth was not terminated for just cause because such termination based on a disability is prohibited under section 21153. Plaintiffs further alleged that, to date, the County had not withdrawn either the application for involuntary disability retirement or Fauth's termination for just cause.

The County filed a cross-petition for writ of administrative mandamus under Code of Civil Procedure section 1094.5, challenging the $297,881 back pay award, on the ground Fauth was only entitled to disability retirement benefits. In addition, the County argued this court had already decided the issue of back pay by denying Fauth's third cause of action for pretermination due process violations. (*Fauth I*, *supra*, 173 Cal.App.4th at p. 1418.) The County also argued the arbitrator erred in awarding back pay when Fauth was offered comparable alternative employment and disability retirement benefits, which Fauth refused to accept.

12

On October 5, 2012, the trial court heard Fauth's writ petition and the County's cross-petition. Counsel for Fauth stated that the application for involuntary disability retirement remained pending and Fauth continued to appeal the application on the ground she was not disabled or unfit to perform her job. Fauth's attorney argued that under section 21153, the County was required to rescind Fauth's termination for cause. The County's attorney responded that it would drop the termination for cause determination if Fauth accepted involuntary disability retirement. This would render the termination for cause matter moot.

On November 28, 2012, the trial court entered an order upholding the arbitrator's decision, with the exception the trial court found back pay should commence as of September 24, 2010, when the first arbitration award was filed. Plaintiffs appeal, and the County cross-appeals the November 15, 2012 order and subsequent judgment.

III

STANDARD OF REVIEW

We review whether the County terminated Fauth's employment for cause, prior to applying for disability retirement, as a question of law applied to undisputed facts. It is undisputed there was cause for terminating Fauth but disputed as to whether the MOU appeal arbitrator could, as a matter of law, under section 21153, find she was terminated for just cause. "Trial courts must 'uphold an agency action unless it is arbitrary, capricious, lacking in evidentiary support, or was made without due regard for the petitioner's rights. [Citations.]' [Citation.] When considering a case, a trial court must 'ensure that an agency has adequately considered all relevant factors, and has

13

demonstrated a rational connection between those factors, the choice made, and the purposes of the enabling statute. [Citation.]' [Citation.] Consequently, because 'trial and appellate courts perform the same function in mandamus actions, an appellate court reviews the agency's action de novo.' [Citation.]" (*Environmental Charter High School v. Centinela Valley Union High School Dist.* (2004) 122 Cal.App.4th 139, 145, quoting *Sequoia Union High School Dist. v. Aurora Charter High School* (2003) 112 Cal.App.4th 185, 195.)

To the extent the trial court has decided pure questions of law based upon undisputed facts, a de novo standard of review will apply on appeal. (*Anserv Ins. Servs., Inc. v. Kelso* (2000) 83 Cal.App.4th 197, 204.) "'In such cases, as in other instances involving matters of law, the appellate court is not bound by the trial court's decision, but may make its own determination. [Citation.]' [Citation.]" (*Pacific Gas and Electric Co. v. State Dept. of Water Resources* (2003) 112 Cal.App.4th 477, 491, quoting *Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 502.) Here, where the issues under review are legal in nature and the underlying facts are undisputed, we apply a de novo standard of review. (*Pacific Gas*, at p. 491.)

IV

PLAINTIFFS' APPEAL—

TERMINATION BASED ON JUST CAUSE

Plaintiffs appeal the trial court order denying their writ of mandate petition seeking withdrawal of Fauth's employment termination. "[A] writ of mandate under Code of Civil Procedure section 1085 requires that the petitioner establish, among other

14

things, that the County failed to perform an act despite having a clear and present ministerial duty to do so." (*Lazan v. County of Riverside* (2006) 140 Cal.App.4th 453, 460 [4th Dist., Div. 2] (*Lazan*).) Fauth argues the trial court erred in denying her writ petition because the County was precluded under section 21153 from terminating Fauth for cause while at the same time determining that she was disabled. The County was required to apply for disability retirement for Fauth under section 21153, and did so in November 2007, after terminating Fauth.

Section 21153 imposes upon the County a ministerial duty to apply for disability retirement if the County believes an employee is disabled. (*Lazan*, *supra*, 140 Cal.App.4th at p. 460.) "[T]he Legislature has precluded an employer from terminating an employee because of medical disability if the employee would be otherwise eligible for disability retirement." (*Haywood v. American River Fire Protection Dist.* (1998) 67 Cal.App.4th 1292, 1305; *Lazan*, *supra*, 140 Cal.App.4th at p. 460.) "Section 21153, therefore, imposes a ministerial duty to apply for disability retirement if the contingency exists, namely, if the employee is 'believed to be disabled.'" (*Lazan*, at p. 460.)

Section 21153 states: "Notwithstanding any other provision of law, an employer may not separate because of disability a member otherwise eligible to retire for disability but shall apply for disability retirement of any member believed to be disabled[.]" Section 21153 is from the "Retirement from Employment" chapter of the PERS legislation (§ 20000 et seq.). The purpose of the statute is to "'serve two objectives: to induce persons to enter and continue in public service, and to provide subsistence for disabled or retired employees and their dependents.' [Citation.]" (*Wheeler v. Board of*

15

*Administration* (1979) 25 Cal.3d 600, 605; in accord, *Lazan*, *supra*, 140 Cal.App.4th at p. 459.) "'Disability pension laws are intended to alleviate the harshness that would accompany the termination of an employee who has become medically unable to perform his duties. (§ 20001.)' [Citation.] Generally, PERS legislation is to be construed liberally in favor of the employee to achieve the above objectives. [Citation.]" (*Lazan*, at p. 459.)

As Fauth correctly asserts in this appeal, under section 21153, the County was precluded from terminating her employment because of a disability if she was eligible to retire for disability. The problem in the instant case has been that Fauth contested, and continues to contest involuntarily disability retirement. This court previously held in *Fauth I* that Fauth was entitled to a MOU appeal of her termination for cause, because Fauth's separate PERS appeal of involuntarily disability retirement remained pending in a separate, mutually exclusive forum.

As this court stated in *Fauth I*, "While Fauth is entitled to appeal involuntary disability retirement under PERS law, this does not bar her right to a MOU appeal, which provides Fauth with a separate opportunity to challenge her dismissal. Under the circumstances in this case, where the county removed Fauth from her job by both terminating her for cause and then applying for her involuntary disability retirement, Fauth remained entitled to a MOU appeal hearing challenging her termination for cause, in addition to a separate appeal contesting involuntary disability retirement, unless there was a final determination upholding Fauth's disability retirement. There is no evidence in the record this occurred." (*Fauth I*, *supra*, 173 Cal.App.4th at p. 1419.)

16

As Fauth requested in the trial court and on appeal, and as this court ordered in *Fauth I*, Fauth received a MOU appeal hearing on whether she was properly terminated for cause. At the time of the MOU hearing, there was unrefuted evidence that Fauth's involuntary disability retirement appeal was still pending. The arbitrator therefore deferred to the court resolution of the County's use of conflicting means of removing Fauth from her job, and decided the factual issue of whether there was just cause to terminate Fauth. Based on evidence Fauth was not mentally fit to carry a gun, a requirement of her position as a sworn officer, the arbitrator found there was just cause to terminate Fauth.

There was also evidence of the County attempting to accommodate Fauth's disability by offering Fauth 13 other job positions, which did not require carrying a gun and that Fauth was qualified to fill. Fauth did not accept any of the positions. She also refused to accept involuntary disability retirement, insisting she did not have a disability. Under these circumstances, in which Fauth was unqualified to perform her job because she was not fit to carry a gun, and she would not accept any of the County's unsworn officer positions, the arbitrator's opinion and award, finding Fauth was terminated for just cause, was proper. Since there was no evidence Fauth's alleged disability retirement appeal had been resolved with finality, the arbitrator was not required to find termination was improper under section 21153, because there remained the possibility involuntary disability retirement might not be upheld by PERS on appeal and Fauth could then be terminated for cause.

17

Plaintiffs cite *Fauth I*, *supra*, 173 Cal.App.4th 1410, *Riverside Sheriffs' Assn. v. County of Riverside* (2011) 193 Cal.App.4th 20 [Fourth Dist., Div. Two] (*Sanchez*), and *Lazan*, *supra*, 140 Cal.App.4th 453, for the proposition the arbitrator was precluded under section 21153 from finding that the County terminated Fauth for just cause. These cases do not address plaintiffs' objection in the instant appeal to the arbitrator's determination that there was just cause to terminate Fauth. The issue in *Lazan* was whether the county was required to apply for involuntary disability retirement under section 21153. We held in *Lazan* that the county had a duty to do so because there was evidence the county believed the employee was disabled and incapable of performing her job duties. (*Lazan*, at pp. 456, 464.) Here, after terminating Fauth for cause, the County applied for involuntary disability retirement for Fauth. However, the County has not expressly rescinded termination of Fauth for cause, and the parties have not established that Fauth's involuntary disability retirement appeal is no longer pending.

*Fauth I* and *Sanchez*, while instructive, also do not address the issue raised here. In *Fauth I* and *Sanchez*, the issue was whether the employee was entitled to a MOU hearing. This court held in both cases the employee was entitled to a MOU hearing, even though the County had also applied for disability retirement for the employee, because the County did not fully rescind termination of the employee. (*Fauth I*, *supra*, 173 Cal.App.4th at p. 1414, and *Sanchez*, *supra*, 193 Cal.App.4th at p. 32.) Although in *Sanchez*, the County said it was rescinding termination, the County, in effect, did not completely rescind termination because the County did not restore all of the employee's wages and benefits that she would have been entitled to had she been an employee.

18

*Fauth I* and *Sanchez* are not on point here because in those cases there had not yet been a MOU hearing and therefore we did not address the issue of whether the MOU hearing officer was required to find the County terminated the employee without just cause as a matter of law under section 21153, when the employee's disability retirement appeal remained pending.

Plaintiffs argue the County has improperly, simultaneously taken two incompatible employment actions removing Fauth from her job. The County initially terminated Fauth for cause and then applied for involuntary disability retirement, without rescinding Fauth's termination. Because Fauth had a right to appeal both these actions in mutually exclusive forums and Fauth demanded a MOU hearing without first resolving her disability retirement appeal, this court permitted a MOU hearing on the termination for cause matter. The MOU arbitrator was not required to resolve the conflict between the two incompatible employment actions, since it was unrefuted Fauth's disability retirement appeal remained pending. As stipulated by the parties at the arbitration hearing, the issue was whether there was cause to terminate Fauth, and the arbitrator appropriately found there was just cause. Under such circumstances, the trial court did not err in denying plaintiffs' petition for a writ of mandate challenging the arbitrator's order finding there was just cause to terminate Fauth.

Plaintiffs argue that, because under section 21153 Fauth was not lawfully terminated, termination could not be for just cause. But it has not been established there was a final determination as to Fauth's disability retirement. Therefore the arbitrator was

19

not required to find under section 21153 that the County terminated Fauth without cause because she was disability retired.

V

THE COUNTY'S CROSS-APPEAL

In the County's cross-appeal, the County challenges the arbitrator's back pay award on numerous grounds, as discussed below.

## A. Facts and Procedural Background Relevant to Back Pay Award

In *Fauth I*, Fauth filed a petition for writ of mandate, alleging the County's failure to allow her to appeal her employment termination violated (1) Article XII of the MOU (first cause of action); (2) POBRA protections, including section 3304, subdivision (b) (second cause of action); and (3) the Fifth and Fourteenth Amendments of the federal Constitution (third cause of action). Fauth requested the court to order a MOU hearing, $25,000 in civil penalties, back pay, and attorney fees and costs under POBRA. (*Fauth I*, *supra*, 173 Cal.App.4th at p. 1417.)

The trial court granted the first cause of action, concluding Fauth was entitled to a MOU appeal hearing, but denied the second cause of action on the ground Fauth was not entitled to relief under POBRA because the County's action was not punitive. The court further denied the third cause of action on the ground Fauth's constitutional due process challenges were moot, since the court was ordering a MOU appeal hearing. (*Fauth I*, *supra*, 173 Cal.App.4th at pp. 1417-1418.)

In *Fauth I*, we affirmed the trial court rulings as to the first and third causes of action, and reversed the trial court ruling dismissing the second cause of action for

20

POBRA relief. (*Fauth I*, *supra*, 173 Cal.App.4th at p. 1414.) This court concluded the County violated POBRA but, because "the trial court did not reach the issue of whether there was malice, which is necessary in order to recover POBRA relief under section 3309.5, this matter [was] remanded to the trial court for factual findings as to whether the county maliciously violated POBRA by refusing to provide Fauth with a post-termination hearing on her dismissal." (*Id*. at p. 1426.) Under *Fauth I*, we concluded Fauth was entitled to a MOU hearing and to a determination as to whether she was entitled to POBRA relief under section 3309.5.

Upon remand, Fauth received a MOU hearing. The parties stipulated to the arbitrator deciding two issues: (1) whether Fauth was terminated for just cause and (2) if not, what was the appropriate remedy. The arbitrator also considered the issue of whether Fauth's preremoval due process rights were violated and whether she was entitled to back pay. The arbitration consisted of a bifurcated hearing, in which the arbitrator first heard and decided the issue of whether Fauth was terminated for just cause. On September 24, 2010, the arbitrator issued a decision finding that Fauth was terminated for just cause. The arbitrator further concluded that the County violated the due process provisions of MOU Article XII and therefore Fauth was entitled to back pay.

The arbitrator conducted a second hearing, addressing the remedy issues arising from the County's due process violations, and issued a decision on July 8, 2011. During the remedy hearing, Jennifer Cooper, principal HR analyst for the County HR department and manager of disability and industrial disability retirement, testified that she met with Fauth as part of the interactive process. The meeting was pursuant to the County's belief

21

Fauth had a disability for which she was entitled to a reasonable accommodation. There were other County investigator positions available to Fauth that did not require Fauth to be a sworn officer. Fauth said she was not interested in any other County jobs or accommodation. Fauth asked for a copy of the Havassy letter.

Cooper explained that, when disability retirement is granted, an employee can work in another position. An employee can receive salary from another County job and disability retirement concurrently, up to the salary amount the employee was earning in their previous sworn position (adding the employee's disability retirement benefit and new job salary). Fauth could have received disability retirement benefits, plus a salary from a different County job, with a cap in her earnings and disability retirement benefits, of 100 percent of her previous salary. Cooper acknowledged that appealing termination for cause is a separate issue from that of disability retirement.

Clarence Allen, manager of the San Bernardino Regional Office of PERS, testified that, when PERS receives a resolution or grant of disability retirement from a local agency, PERS processes the application and calculates the disability retirement benefits based on a set formula. The disability retirement benefits estimate for Fauth was $3,127.63.

Veronica Veal, Riverside County HR services manager for the justice team, which provides HR services for the district attorney and public defender offices, testified the County met with Fauth in October 2006, and sent her a letter regarding meeting in December 2006, in furtherance of the interactive process, but Fauth was not interested in participating. Had Fauth been willing to participate, the County would have been

22

obligated to place Fauth in one of the available non-sworn County positions. Sworn positions were not considered because Fauth had been determined to be unfit for the sworn positions. The County looked at Fauth's qualifications to determine at the time of the interactive process which positions were available, for which Fauth was qualified. A month later, reversing course, the County sent Fauth a letter dated January 16, 2007, stating that the County had concluded there was no medical evidence suggesting Fauth had a qualifying disability. Veal acknowledged that HR does not typically engage in the interactive process with people who are not County employees. At the time of the interactive process, Fauth was still a County employee, and was still employed by the County as of December 6, 2006.

Fauth testified that in 2008, she worked as an administrative assistant II for UC Irvine. In 2009, she was promoted to senior administrative analyst and currently held that position at UC Irvine. Her gross biweekly salary at UC Irvine was $1,969.35. Fauth stated that, after the County terminated her on March 17, 2007, Fauth diligently looked for work. She applied for numerous jobs but did not apply for jobs with the County because she had been terminated and was involved in litigation with the County regarding her termination. Fauth believed that, at that point, she was not a viable candidate for a County job.

Fauth further testified that, although the County granted her disability retirement, she never collected any disability retirement benefits because she appealed disability retirement. Fauth believed she was not psychologically disabled. Fauth stated that, as far as she knew, her appeal remained pending. Fauth's attorney also told the arbitrator that,

23

as far as he knew, Fauth's appeal was still pending. Fauth believed that, upon appealing disability retirement, payment of disability retirement benefits is stayed. The County's attorney argued that Fauth could have received disability retirement benefits during the appeal. Fauth confirmed she had not received any disability retirement benefits. On cross-examination, Fauth stated that she never applied for disability retirement and was never given anything to accept. Fauth testified that she and RSA, through their attorney, were appealing the County's nonindustrial disability retirement application because Fauth believed she was not psychologically disabled.

The arbitrator issued an award and opinion on the remedy issues on July 8, 2011. The arbitrator determined that Fauth was entitled to recover from the County $297,881 in back pay from the effective date of termination, March 17, 2007, through April 15, 2010, the date of the initial MOU hearing, for the County's violation of Fauth's due process rights under Article XII of the MOU. Fauth was also awarded three years of PERS service credit for that same period. The arbitrator rejected the County's arguments that, because Fauth may be entitled to disability retirement, she was barred from receiving back pay. The arbitrator reasoned that, although termination for cause and involuntary disability retirement involve two distinct, incompatible means of removing an employee from employment, "a final determination remains pending regarding [Fauth's] appeal of her disability retirement benefits." The arbitrator also concluded there was sufficient evidence Fauth attempted to mitigate her damages.

The parties filed writ petitions in the trial court, objecting to the arbitrator's arbitration decisions. Following extensive oral argument, the trial court denied plaintiffs'

24

writ petition and the County's cross petition, with the exception the trial court granted plaintiffs' petition to the extent the trial court extended back pay beyond the April 15, 2010, MOU hearing, through the date of issuance of the initial arbitration decision issued on September 24, 2010. The trial court noted the pending disability retirement appeal was not before the court, and the disability retirement and termination for cause proceedings were being decided in mutually exclusive forums. The trial court concluded it did not have sufficient information to determine whether disability retirement preempted termination for cause.

## B. Scope of the Arbitrator's Authority to Award Back Pay

The County argues the arbitrator did not have authority to decide the issue of whether Fauth's preremoval due process rights were violated and she was entitled to back pay, because in *Fauth I*, *supra*, 173 Cal.App.4th at page 1427, this court affirmed the trial court's denial of Fauth's third cause of action alleging pretermination due process violations.

The arbitration decision states that "the Arbitrator's order of back pay was grounded in the County's violation of the procedural due process rights afforded by MOU Article XII rather than the consideration of external law." The decision further states: "With respect to the County's argument that [Fauth] is not entitled to the '*Skelly*'[5] remedy specified in the award, it is emphasized that back pay was ordered to remedy the County's act of terminating [Fauth] without complying with the MOU's

---

**5** *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194 (*Skelly*).

25

Article XII preremoval due process requirements. That the undersigned ultimately found that [Fauth]was terminated for cause and was therefore ineligible for reinstatement does not negate or nullify her entitlement to back pay for the County's procedural violation of the MOU. As pointed out by the Association, neither *Skelly* nor *Barber* can be read for the proposition that an employee in [Fauth's] situation is foreclosed from receiving back pay for a proven contractual due process violation as was the case here."

This court's holding in *Fauth I* did not preclude the arbitrator from awarding back pay arising from the County's violation of MOU Article XII rights to pretermination due process protections. In *Fauth I*, this case was remanded for a MOU hearing and determination of whether Fauth was entitled to recover POBRA relief under section 3309.5. Subdivision (e) of section 3309.5 provides in relevant part: "In addition to the extraordinary relief afforded by this chapter, upon a finding by a superior court that a public safety department, its employees, agents, or assigns, with respect to acts taken within the scope of employment, maliciously violated any provision of this chapter with the intent to injure the public safety officer, the public safety department shall, for each and every violation, be liable for a civil penalty not to exceed twenty-five thousand dollars ($25,000) to be awarded to the public safety officer whose right or protection was denied and for reasonable attorney's fees as may be determined by the court. *If the court so finds, and there is sufficient evidence to establish actual damages suffered by the officer whose right or protection was denied, the public safety department shall also be liable for the amount of the actual damages.*" (Italics added.) Here, the trial court found

26

the County maliciously violated Fauth's due process rights and awarded her a $25,000 civil penalty under section 3309.5.

Under *Barber*, an employee who is terminated in violation of *Skelly* pretermination due process requirements or other constitutional rights is entitled to back pay during the period preceding compliance with pretermination due process requirements. (*Barber*, *supra*, 18 Cal.3d at p. 403.) As the California Supreme Court explained in *Barber*, the constitutional infirmity of the disciplinary procedures used in *Barber* "was the imposition of discipline prior to affording the employee notice of the reasons for the punitive action and an opportunity to respond. [Citation.]" (*Barber*, *supra*, 18 Cal.3d at p. 403.) This infirmity is not corrected until the employee has been given an opportunity to present his arguments to the authority *initially* imposing discipline. (*Ibid*.) "Under the procedures applied to plaintiff, the constitutional vice existed until the time the board rendered its decision. Prior to that time, the discipline imposed was invalid." (*Ibid*.)

Because Fauth was terminated before she was afforded an opportunity to respond to the reasons for her termination, she was entitled to back pay until the County fully complied with the MOU Article XII due process requirements. Under *Barber*, compliance did not occur until Fauth received a MOU hearing and the arbitrator issued his decision on whether Fauth was terminated for just cause. Even though the third cause of action for pretermination due process violations was dismissed, and this court affirmed dismissal of the third cause of action in *Fauth I*, this did not preclude the arbitrator from awarding back pay and considering pretermination violations under Article XII of the

27

MOU.  The MOU requires compliance with *Skelly* pretermination due process protections, including affording the employee notice of the reasons for termination and an opportunity to respond.  (*Skelly*, *supra*, 15 Cal.3d at p. 215.)

The third cause of action was founded on the Fifth and Fourteenth Amendments of the United States Constitution.  The trial court concluded, as did this court, that by allowing plaintiffs to proceed on the first cause of action, the third cause of action seeking relief for pretermination due process violations was moot.  This is because the first cause of action, providing for a MOU arbitration hearing and remedies, encompassed the allegations and relief included in Fauth's third cause of action, alleging pretermination due process violations.  In addition, the second cause of action requested a hearing mandated under section 3304, subdivision (b)[6] and POBRA relief.

Under *Fauth I*, the County was required to provide Fauth with a MOU appeal hearing.  In turn, the MOU arbitrator had authority to address the County's violations under the MOU when terminating Fauth, including pretermination due process violations enumerated in Article XII of the MOU, and award Fauth appropriate remedies, including damages.  Under Article XII of the MOU and section 3309.5, the arbitrator therefore had authority to award Fauth back pay for the County's violation of her pretermination due

---

[6] Section 3304, subdivision (b), provides:  "(b) No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency against any public safety officer who has successfully completed the probationary period that may be required by his or her employing agency without providing the public safety officer with an opportunity for administrative appeal."

28

process rights, to respond to the County terminating Fauth for cause. (*Skelly, supra*, 15 Cal.3d at p. 215.)

## C.  Back Pay Even Though Terminated for Cause

Citing *Barber*, *supra*, 18 Cal.3d 395, the County argues that Fauth did not legally qualify for back pay for wrongful discipline because her termination was sustained for cause.  The County quotes *Barber*, which states, "damages consist only of back pay for the period discipline was improperly imposed." (*Id*. at p. 402.)  The County argues Fauth should not be rewarded for appealing a substantively correct termination.

In *Barber*, *supra*, 18 Cal.3d 395, the plaintiff was dismissed from his job as a California Youth Authority counselor, based on charges of dishonesty, willful disobedience, and other misconduct.  Seven months later he was accorded a State Personnel Board administrative hearing.  The board adopted the hearing officer's decision that the employee's dismissal be sustained.  The trial court denied the employee's petition for writ of mandate seeking reinstatement and back pay. (*Id.* at pp. 398-399.)  The California Supreme Court reversed the trial court judgment as to denial of back pay, holding that an employee dismissed without compliance with *Skelly* pretermination due process rights (notice and an opportunity to respond) is entitled to back pay from the time discipline is actually imposed until the date the State Personnel Board files its decision. (*Barber*, at pp. 402-403.)

Here, as in *Barber*, even though the arbitrator found Fauth was terminated for just cause, Fauth was entitled to back pay because she was terminated before she was given an opportunity to respond to notice of termination.  It was not until after the court ordered

29

the County to provide a MOU appeal hearing and Fauth received the hearing, that Fauth had the opportunity to contest her termination for cause.

## D. Absence of Showing Disability Retirement is Final

The County argues Fauth never properly appealed disability retirement and, even if she did, her appeal was not timely and is no longer pending. But the County did not establish this at the arbitration hearing or during the subsequent trial court hearing on the writ petitions. In a letter dated January 31, 2008, sent to the County's HR director, Fauth stated that on January 26, 2008, she received an application for retirement benefits from PERS and "hereby appeal [the County's] decision to retire me." During the remedy portion of the MOU arbitration, Fauth testified she appealed disability retirement and never collected any disability retirement benefits. Fauth stated that, as far as she knew, her appeal was still pending. Fauth's attorney also stated that Fauth's disability retirement appeal was pending. The County did not refute this. During cross-examination, Fauth again stated that she and RSA were appealing the County's disability retirement application because she did not believe she was psychologically disabled. Even though the PERS regional manager testified at the MOU hearing, there was no testimony or evidence presented as to whether Fauth had appealed disability retirement, whether her appeal was rejected as improper or untimely, or whether it was still pending.

The arbitrator appropriately awarded Fauth back pay, since the County did not establish during the arbitration hearing that Fauth's appeal was no longer pending and disability retirement was final. As we stated in *Fauth I*, termination for cause and involuntary disability retirement involve mutually exclusive forums, and therefore Fauth

30

had a right to a MOU hearing contesting termination and to seek appropriate POBRA remedies under section 3309.5, subdivision (e). We recognize that, as the County asserts in its cross-appeal, Fauth cannot recover both disability retirement benefits and back pay for termination. (*Davis v. Los Angeles Unified School District* (2007) 152 Cal.App.4th 1122, 1134, citing *Blackburn v. Martin* (4th Cir. 1992) 982 F.2d 125, 129; *Hartman v. Duffey* (D.D.C. 1998) 8 F.Supp.2d 1, 5 ["back pay is cut off by death, disability, retirement, or voluntary departure from the workforce"].) "'[A]s a general rule, a claimant will not be allowed back pay during any periods of *disability* . . . (or would only be able to recover the difference in disability pay . . .) on the theory that she similarly would not have been able to work. . . .' [Citation.]" (*Davis*, at p. 1134, quoting *Mason v. Association for Independent Growth* (E.D. Pa. 1993) 817 F.Supp. 550, 553-554.)

The County argues that awarding Fauth back pay would result in Fauth "double dipping" or receiving double recovery, consisting of her salary and disability retirement benefits. But the record shows that, at the time of the arbitration hearing and subsequent writ petition hearing, Fauth had attempted to appeal disability retirement, she had not received any disability retirement benefits, and, according to Fauth and her attorney, her appeal was still pending. Under such circumstances it remained speculative whether Fauth would receive disability retirement benefits. Once it is established Fauth's disability retirement appeal is no longer pending and there is a final determination as to whether Fauth is entitled to disability retirement benefits, the appropriate adjustment or offset can be made, if necessary, so that Fauth does not receive a double recovery of both her salary and disability retirement benefits.

**E. Pretermination Due Process Violations**

The County argues it did not violate Fauth's pretermination due process rights. The County asserts that, before terminating her, it clearly stated in several letters that the County intended to terminate Fauth. But the County's letters vacillated between advising Fauth she had a disability and would be involuntarily disability retired, and telling her she did not have a disability and would be terminated for cause. She was also told she was not entitled to a MOU hearing under Article XII, when she should have been told she was entitled to a MOU hearing and provided an opportunity to be heard and object to termination. The County did not comply with the termination procedures required under Article XII, which provided due process protections.

Article XII, section 6 provides: "By resolution, the Board of Supervisors shall provide a procedure whereby the involuntary dismissal, demotion, reduction in compensation, or suspension of an employee, shall at the employee's request, be reviewed to determine whether such action was justified and should be upheld. The procedure shall include the right, after notice, to a hearing before a designated body or officer having power to affirm, revoke or modify the action reviewed."

In addition, Article XII, section 9 requires that the County serve an intent and implementation letter, providing written notice of intent to terminate, at least seven working days before the effective date of termination. The letter must attach a copy of the materials upon which the action is based or make them available upon request, and include a "statement informing the employee of the right to respond either verbally or in writing, to the Department Head prior to the effective date of the disciplinary action(s)."

The County is also required under Article XII, section 9 to include in the intent letter a "statement informing the employee of the right to appeal within 10 working days of the date the letter is served on the employee." The County acknowledges that Article XII, section 9 of the MOU essentially codifies the *Skelly* due process requirements.

The County did not substantially comply with the MOU Article XII due process requirements. None of the County's letters prior to the March 7, 2007, termination letter, notified Fauth that the County intended to terminate her, provided a date of termination, or notified Fauth of her pretermination right to respond to termination and inspect supporting documentation. In Hodson's March 7, 2007, letter notifying Fauth she was terminated effective March 17, 2007, Hodson indicated Fauth was not entitled to a review of her termination. Instead of telling Fauth she had a right to a MOU appeal, the County erroneously told her Article XII of the MOU was inapplicable and she was not entitled to any due process protections because her termination did not constitute a taking of any property right.

The County further denied Fauth the opportunity to be heard and object to her termination. On March 15, 2007, plaintiffs' attorney notified the County that, in furtherance of challenging Fauth's termination, plaintiffs requested copies of all documentation the County relied upon in terminating her. The County did not respond. Later, in response to plaintiffs' attorney's April 18, 2007, letter enclosing a demand to reinstate Fauth, the County sent plaintiffs' attorney a letter dated April 25, 2007, stating that Fauth was not entitled to a MOU appeal hearing because she was not terminated for disciplinary reasons.

The County also rejected plaintiffs' request on January 9, 2008, for a *Skelly* meeting with the County. The County repeatedly denied Fauth's attempts to respond to termination as procedurally inappropriate. This court disagreed in *Fauth I*, holding that Fauth was entitled to a MOU hearing. (*Fauth I*, *supra*, 173 Cal.App.4th at p. 1424.) The County's failure to provide Fauth with an opportunity to respond, either before or after termination, constituted a denial of Fauth's due process rights, which, in turn, entitled Fauth to back pay until she received a proper hearing and decision on her MOU appeal. (*Barber*, *supra*, 18 Cal.3d at pp. 402-403; *Skelly*, *supra*, 15 Cal.3d at p. 215.) There is more than ample evidence establishing that the County violated Fauth's due process rights by terminating her without complying with due process procedural requirements stated in MOU Article XII.

## F. Back pay Extending from Termination, Until Date of Arbitrator's Decision

Because the County denied Fauth's request for a MOU hearing, under *Barber*, she is entitled to back pay from the time of her termination on March 17, 2007, until the date the arbitrator issued his decision on September 24, 2010. (*Barber*, *supra*, 18 Cal.3d at pp. 404-405.) Fauth is entitled to back pay during this period because of the County's "imposition of discipline prior to affording [her] notice of the reasons for the punitive action and an opportunity to respond. (*Skelly v. State Personnel Bd.*, *supra*, 15 Cal.3d at p. 215.) This infirmity is not corrected until the employee has been given an opportunity to present [her] arguments to the authority *initially* imposing discipline. (*Id*.) Under the procedures applied to plaintiff, the constitutional vice existed until the time the [County] rendered its decision. Prior to that time, the discipline imposed was invalid. The

[County's] argument that we should measure damages terminating at the time the employee could reasonably have responded cannot be accepted. The due process right to respond exists only if response is permitted to be made, and therefore must be available for consideration prior to rendering the disciplinary decision. As noted, at the time plaintiff was permitted to file an answer, the discipline imposed on [her] was invalid. The proper period for measuring the amount of back pay due therefore begins at the time discipline is actually imposed and ends on the date the [County] files its decision." (*Barber,* at p. 403.)

The County argues the trial court incorrectly extended back pay beyond the April 15, 2010, MOU hearing date, until the arbitration decision was issued on September 24, 2010. The arbitrator limited back pay to the period from termination, until the April 15, 2010, MOU hearing date. The arbitrator explained in his decision that, "Although the Court's holding in *Barber* . . . is acknowledged, the Arbitrator believes that the contractual due process violation at issue was sufficiently cured as of the April 15, 2010 hearing to toll any back pay remedy. . . . Thus, [Fauth's] back pay is limited to the period from her termination, March 17, 2007, to the April 15, 2010 hearing."

However, even though Fauth received a hearing, the MOU appeal process was not complete and her termination was not final until she received a decision. *Barber* clearly states that the back pay period ends on the date the decision on the employee's appeal is filed, not the date of the hearing. (*Barber*, *supra*, 18 Cal.3d at p. 403.) The trial court in the instant case appropriately extended back pay until the date the arbitrator issued his decision on September 24, 2010.

35

## G. Mitigation of Fauth's Damages

The County contends the arbitrator erred in not taking into account Fauth's failure to mitigate her damages. The County argues Fauth rejected 13 jobs the County offered her during the interactive process. She also refused to accept disability retirement benefits. The County argues that, because Fauth did not mitigate her damages, she is not entitled to any back pay, or her back pay should be significantly reduced.

"In the context of wrongful termination, the general rule is that a public employee who is wrongfully discharged has a duty to exercise due diligence to mitigate damages while pursuing remedies against the employer. [Citation.] The exercise of due diligence includes the duty to look for comparable employment. [Citation.] The employer has the burden to show mitigation, i.e., what the employee has earned or with reasonable diligence might have earned from other employment. [Citation.] 'However, before projected earnings from other employment opportunities not sought or accepted by the discharged employee can be applied in mitigation, the employer must show that the other employment was comparable, or substantially similar, to that of which the employee has been deprived; the employee's rejection of or failure to seek other available employment of a different or inferior kind may not be resorted to in order to mitigate damages.' [Citation.]" (*Martin v. Santa Clara Unified School Dist.* (2002) 102 Cal.App.4th 241, 255.)

Although the County offered Fauth 13 County jobs at the interactive meeting in October 2006, there was substantial evidence that the jobs were not comparable jobs. Also, the jobs were offered before Fauth was terminated, during the interactive process

for accommodating Fauth's disability, while she was on paid leave, and before she was provided a copy of the Havassy letter stating the basis of the County's determination Fauth had a disability. Fauth did not believe she had a disability and therefore was not willing to accept a nonsworn officer position. Fauth told the County she could not determine what jobs she qualified for because the County had not provided her with the Havassy letter or any information regarding her alleged permanent limitations. Then several months later, in January 2007, the County reversed course and told Fauth she did not have a disability or illness; and, reversed course again, terminating her in March 2007 on the ground she could not perform her job because of a mental disability. Then in November 2007, the County reversed course once again and applied for disability retirement, retroactive to January 2007.

The County vacillated between treating Fauth as having a disability and not having a disability; terminating her for cause, and then applying for disability retirement for her. Under these circumstances, Fauth did not have a duty to mitigate until she was notified she was terminated in March 2007. (*California School Employees Assn. v. Personnel Commission* (1973) 30 Cal.App.3d 241, 249-250; *Valle de Oro Bank v. Gamboa* (1994) 26 Cal.App.4th 1686, 1691.) This is when the back pay awarded to Fauth began accruing. There is substantial evidence that, at this point, Fauth mitigated her damages by making a concerted effort to find another job.

It was reasonable that once the County terminated Fauth she did not apply for any of the County jobs previously offered, since it was not likely she would be hired after she was terminated and was litigating her termination. Furthermore, there was evidence that

37

the County jobs offered her were not comparable because most of the jobs did not offer similar duties and responsibilities, and the compensation was significantly less than her current job (at least 38 percent less). In addition, the County did not offer evidence of any comparable non-County jobs.

Fauth, on the other hand, presented substantial evidence that she made a concerted, good faith effort to find another job after she was terminated. Fauth testified at the arbitration hearing that in 2008, after her termination on March 17, 2007, she consistently looked for work. She applied for numerous jobs. Fauth testified she did not apply for jobs with the County because she was terminated and involved in litigation regarding her termination. Fauth reasonably believed she was not a viable candidate for a County job at that point. Fauth further testified that eventually she was hired by UC Irvine as an administrative assistant. In 2009, she was promoted to senior administrative analyst and currently holds that position at UC Irvine. The arbitrator appropriately offset the amount of back pay awarded to Fauth by the sum of $89,313, consisting of Fauth's unemployment insurance benefits and earnings received from her UC Irvine employment.

Fauth's refusal to accept disability retirement benefits also does not constitute a failure to mitigate, because Fauth was appealing disability retirement. Fauth was not required to accept disability retirement benefits for purposes of mitigating back pay damages, or County jobs, when the County terminated her employment for just cause, and the jobs were offered five months before the County told her it intended to terminate her. Substantial evidence supports the arbitrator's determination that Fauth did not fail to mitigate her damages.

# VI

## DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.

Sanctions are denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON  
J.

We concur:

RAMIREZ  
P. J.

KING  
J.