Filed 9/8/16  Laborers International Union etc. v. County of Riverside CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| LABORERS INTERNATIONAL UNION OF NORTH AMERICA, et al., | |
| Plaintiffs and Appellants, | E063886 |
| v. | (Super.Ct.No. RIC1410946) |
| COUNTY OF RIVERSIDE, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  John W. Vineyard, Judge.

Affirmed.

Rothner, Segall & Greenstone, Anthony R. Segall, Jonathan Cohen and Maria Keegan Myers for Plaintiffs and Appellants.

Woodruff, Spradlin & Smart, M. Lois Bobak and Daniel K. Spradlin for Defendant and Respondent.

1

# I

## INTRODUCTION

Plaintiff Samuel Merenda was employed as an investigator by the office of the Riverside County Public Defender (OPD). His employment was terminated after he wrote a memorandum damaging his credibility as an investigator. In the concluding sentence of the memorandum—which documented his conversation with a witness in a murder case—he wrote: "Let me know if you want an 'interview' report and I'll get you one, minus the confession." On appeal, Merenda asserts he did not expect a "one-sentence joke . . . to cost him his career."

Merenda appeals from the judgment denying his petition for writ of mandate. We find that substantial evidence supports the trial court's ruling. We affirm the judgment.

# II

## FACTUAL AND PROCEDURAL BACKGROUND

Merenda served in the Air Force and then worked for the San Bernardino County Sheriff for 20 years. In 2003, he began working for the OPD. His employment was terminated on August 23, 2012.

As an investigator, Merenda's duties included locating and investigating witnesses, preparing written reports, and testifying. He prepared two types of written reports: 1) investigative, or interview, reports, and 2) confidential memoranda. An interview report contains factual information from a witness. A confidential memorandum includes an investigator's impressions and opinions. The former may be disclosed to the District Attorney. Confidential memoranda are not subject to disclosure.

In 2008, Merenda was assigned to work on the defense of Juan Coronado, who was charged with murder. At the direction of the OPD, Merenda reluctantly interviewed Marquan Lee, a friend of Coronado's. Merenda did not believe Lee was a credible witness because he was a heavy user of drugs and alcohol. Lee told Merenda that Coronado had confessed to the murder, stating that he and another person "put a 'Lick' on an old man and took his car," meaning they had killed him.

Merenda wrote a confidential memorandum of the interview for Addison Steele, the lead public defender, including Lee's statement about Coronado's confession. Merenda ended the report by stating, "Let me know if you want an 'Interview' report and I'll get one, minus the confession." In August 2008, Merenda was transferred from the Coronado case. In August 2011, another investigator, Gene Brisco, interviewed Lee and prepared an interview report that did not mention Coronado's confession.

In 2011, both Merenda's 2008 confidential memorandum and the 2011 interview report were inadvertently disclosed to prosecutors. In December 2011, Judge Christian Thierbach reviewed the two documents and ruled Coronado's right to a defense was "severely compromised, if not totally eliminated, by the breach of attorney-client privilege" and even "more troubling is the very real appearance that defense investigators employed by the public defender's office have engaged in conduct suggesting a willingness to fabricate or alter evidence, up to and including the subornation of perjury, in an effort to mount a defense." The judge removed the OPD from the Coronado case.

3

The OPD then filed a writ challenging the order of removal. This court found there was substantial evidence of a potential conflict of interest and remanded to the trial court. The OPD then declared a conflict and removed itself from Coronado's case.

In 2012, the OPD decided to terminate Merenda's employment. An arbitrator upheld the termination in August 2014. Judge John W. Vineyard denied Merenda's subsequent petition for writ of mandate challenging the arbitrator's decision. Both the arbitrator and Judge Vineyard focused on the evidence that showed Merenda understood and admitted his error, as well as the effect it would have on his ability to perform his duties as an investigator, especially his credibility when testifying in court.

Merenda has offered various explanations about what he meant by the last sentence of the memorandum. In 2011, he submitted a declaration in which he stated he could not honestly explain the last sentence. However, in the arbitration hearing in 2014, he testified he intended the last sentence to express his frustration about having to interview Lee, whom he regarded as a suitable witness only for the penalty phase. He also claimed the sentence was meant as a joke because Steele had teased him about police officers lying and changing their reports. Merenda believed that Steele and others with the OPD understood he was not seriously proposing to prepare an interview report omitting the confession. On appeal, he characterizes the sentence as an ill-advised joke or as sarcasm.

Other material facts are discussed in the body of the opinion.

III

STANDARD OF REVIEW

The parties agree the standard of review on appeal is the substantial evidence test. (*Fukuda v. City of Los Angeles* (1999) 20 Cal.4th 805, 824; *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)  We agree with respondent that Merenda has not fairly addressed the evidence and instead has focused mostly on the evidence supporting his position.  (*Foreman,* at p. 881.)  Nevertheless, in the interest of justice, we will review the record to determine if substantial evidence supports the judgment.  (*Roy v. Superior Court* (2011) 198 Cal.App.4th 1337, 1347.)  We afford the prevailing party every reasonable inference in support of the judgment.  (*Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 52.)

To the extent, we engage in legal interpretation of the Memorandum of Understanding (MOU) between the Union[1] and the County of Riverside, we employ an independent standard of review.  (*Riverside Sheriffs' Assn. v. County of Riverside* (2009) 173 Cal.App.4th 1410, 1424 [Fourth Dist., Div. Two], citing *Service Employees Internat. Union v. City of Los Angeles* (1994) 24 Cal.App.4th 136, 143-144.)

IV

GOOD CAUSE FOR TERMINATION

Merenda's employment is governed by Article XI of the MOU, which specifies what constitutes misconduct and "good cause" for discipline.  Among the grounds

---

[1] Laborers' International Union of North America, Local 777.

5

identified as good cause for dismissal are "Inefficiency or negligence in performance of duties," "Neglect of duty," and "Conduct . . . which adversely affects the employee's job performance . . . ."

Merenda argues there is not substantial evidence to support the trial court's independent finding that Merenda reasonably should have known his conduct could adversely affect his performance and could lead to dismissal. Merenda cites *Cranston v. City of Richmond* (1985) 40 Cal.3d 755, 770, which in turn cites the "seven tests" of good or just cause: "The analysis we follow here is consistent with the principles commonly applied by labor arbitrators in determining the propriety of discipline under the standard of 'just cause.' 'A fundamental component of the just-cause standard is that employees must be told what kind of conduct will lead to discipline—especially if the penalty is to be discharge. An employee can hardly be expected to abide by "the rules of the game" if the employer has not communicated those rules, and it is unrealistic to think that, after the fact, an arbitrator will uphold a penalty for conduct that an employee did not know was prohibited.' (Koven & Smith, Just Cause: The Seven Tests (1985) p. 25.)" (*Ibid.* at fn. 13.)

Both the arbitrator and the trial court concluded that there was good cause for Merenda's dismissal based on the following evidence and reasoning. The arbitrator held that an employer must show good cause by establishing by a preponderance of the evidence that the employee reasonably should have known that his conduct could lead to discipline and its level of severity. The arbitrator found that Merenda admitted his lack of judgment in drafting the memorandum regardless of how he intended it to be

6

understood. Furthermore, Merenda expressed a subjective understanding of the potential ramifications of his conduct. In particular, the arbitrator found Merenda reasonably should have known that the memorandum could compromise his credibility when testifying in court and therefore could result in discipline, including termination.

The arbitrator concluded: "This record, the 2008 memorandum itself, and [Merenda's] own admissions establish the damaging perception the 2008 memorandum has caused. There can be no doubt . . . that this memorandum has created, at minimum, the specter of conflict and concern in any case that [Merenda] touches from here on out. Such is the proven harm here. [¶] . . . [T]he essential functions of his job include testifying in court and, through investigation, assisting in the representation of PD criminal defendants sometimes on trial for their lives. Be it couched as negligence or conduct which adversely affects his job performance or operation of the PD, his lack of judgment in this single instance and the resulting harm have created a hurdle to his continued employment that neither Employer nor its client criminal defendants should be forced to overcome. Discharge from service was reasonable in light of the circumstances. Employer has proven all elements of the 'good cause' analysis necessary to establish the charges and sustain [Merenda's] termination."

In its statement of decision the trial court independently ruled that good cause had been shown: "Merenda does not argue or point to any evidence that establishes that he was not aware of the contents of the MOU during his employment or that the conduct complained of—indicating in a memorandum his willingness to prepare an investigative report where evidence is left out, did not constitute such violations under the MOU. [¶]

7

Merenda's credibility is an important aspect of his job. He was aware of this fact. [Citation.] An investigator can be questioned on the stand regarding facts outside the case that could affect his or her credibility. [Citation.] Merenda testified that the last sentence in his 2008 memorandum gave the perception not just to the court and the district attorney that he was willing to remove information from a witness statement, but also to his employer. [Citation.] Due to this, there is sufficient evidence that Merenda was aware that conduct that called into question his credibility fell within the MOU's ground for dismissal."

Based on our review of the record, we agree with the arbitrator and the trial court. The facts contradict Merenda's contention that he had no notice that writing a private joke in a confidential memorandum could affect his job performance and lead to termination. Substantial evidence belies a claim that the confidential memorandum was "private." The report was available to anyone in the public defender's office with access to the Coronado case file. Although Merenda repeatedly asserts that the last sentence was meant as a private joke, there is substantial evidence to the contrary. In his 2011 declaration, Merenda wrote he could not honestly explain why he wrote the sentence. He also suggested he was trying to provoke Steele for not reading the reports he prepared. Before the Coronado writ petition was filed, Merenda told the OPD that he did not mean the statement as a joke. During the administrative hearing, Merenda testified that he did not know if he was joking but that he was trying to get Steele's attention. Merenda also testified he was upset with Steele because he believed interviewing Lee was a waste of time and he wanted to force Steele to ask him to write a second report. The foregoing

8

evidence supports a finding that Merenda did not write the last sentence as a private joke but, instead, because he was frustrated with Steele.

In any case, whether Merenda was joking or had another motivation, he reasonably must have known his conduct could subject him to discipline. Article XI of the MOU puts all union employees in the OPD on notice of the types of misconduct considered good cause for termination of employment, including inefficiency or negligence in the performance of duties, neglect of duty, and conduct that adversely affects the employee's job performance. Merenda admitted that he knew it was improper to remove a material fact from a report. Merenda admitted his offer to write a second report omitting Coronado's confession showed poor judgment.

Merenda also knew such conduct could adversely affect his credibility. As he stated in 2011, "I understand there is 'no good' explanation for having a sentence included in a memo that leaves anyone, who may read it, coming away thinking I was willing to change reports to fit a situation" and "I do admit it does show my ignorance or my lack of thought and judgment at the time, of any Appeals processes, and the obvious damage to our credibility." During the arbitration, Merenda testified that it would be "very difficult" for him to rebut the perception of a lack of integrity. Merenda also testified that it was "obvious" that his integrity, credibility, and ability to testify in court had been compromised.

Any perception that Merenda was not credible or not reliable would necessarily adversely affect Merenda's performance as an investigator, and therefore constitute grounds for dismissal under the MOU. Merenda's own statements constitute substantial

9

evidence supporting the trial court's determination that Merenda should have known that the last sentence in his June 2008 report "gave the perception not just to the court and district attorney that he was willing to remove information from a witness statement, but also to his employer." Thus Merenda reasonably should have known he could be subject to discipline, including termination.

V

PRETERMINATION INVESTIGATION

As an additional argument related to good cause, Merenda maintains the OPD did not conduct a full and fair investigation before terminating his employment, citing *Cotran v. Rollins Hudig Hall Internat., Inc.* (1998) 17 Cal.4th 93 [involving private not public employment], out-of-state administrative decisions, and the Koven & Smith treatise on just cause.[2] Merenda contends the pretermination investigation in this case was inadequate because the OPD did not interview Merenda or any other witnesses about the confidential memo. However, substantial evidence in the record demonstrates that the OPD conducted an adequate investigation before deciding to terminate Merenda's employment.

The OPD complied with case law governing public employment and due process. (*Cleveland Bd. of Educ. v. Loudermill* (1985) 470 U.S. 532, 538, 545-548; *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194, 207-208; *Townsel v. San Diego Metro. Transit Dev. Bd.* (1998) 65 Cal.App.4th 940, 949.) The "right to respond" includes the

---

[2] Although Merenda cites the 2006 edition we have only been able to obtain and review the 1985 edition cited by the California Supreme Court in *Cranston*.

10

administrative procedure known as a "*Skelly* hearing," in which the employee receives an opportunity to respond "either orally or in writing" to "the authority initially imposing discipline." In addition, the employer must provide an opportunity for a postdiscipline evidentiary hearing. (*Skelly,* at p. 215.)

We hold the OPD made an adequate investigation under the circumstances. As conducted for the OPD, Gary Windom reviewed the June 2008 memorandum and contacted Peter Scalisi, who reported that Steele had construed the last line of Merenda's memo as a joke. Windom interviewed Merenda, who admitted writing the memorandum but could not explain the last sentence except as an attempt to get Steele's attention. Windom also reviewed Merenda's December 2011 declaration, including case reports authored by Merenda. In connection with the writ petition, Windom spoke to both Steele and Brisco and the District Attorney. Windom tried to talk to Judge Thierbach who refused to speak to him. After the writ had been filed, Windom consulted about disciplinary action with the county's human resources director and private outside legal counsel.

At the *Skelly* hearing, Merenda had an opportunity to present additional evidence before a final decision was made. (*Skelly v. State Personnel Board, supra*, 15 Cal.3d at p. 214.) Windom testified that the *Skelly* hearing did not change his opinion regarding the proposed termination. Merenda then received a full evidentiary hearing before a neutral arbitrator. The circumstances of this case did not warrant anything more. As Merenda stated in his declaration, he could not explain why he wrote the last sentence of the memorandum but he assumed he did it to get Steele's attention. Merenda's admissions

11

about his lack of judgment established the harm caused by the memorandum. What could be interpreted as Merenda's apparent willingness to manipulate evidence irreparably damaged his credibility. Additional investigation would not have changed that outcome. Under these circumstances, there was nothing more for Windom to investigate. There was uncontroverted evidence that Merenda engaged in the conduct that was grounds for the disciplinary action.

VI

PENALTY OF TERMINATION

We independently review Merenda's additional claim that the penalty of termination was an excessive abuse of discretion. (*Antelope Valley Press v. Poizner* (2008) 162 Cal.App.4th 839, 851; *Cadilla v. Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 966.) In *Hughes v. Board of Architectural Examiners* (1998) 68 Cal.App.4th 685, 692-693, the court held that an administrative penalty is not excessive merely because there is no actual harm to the public service. Because the conduct of public employees should be above reproach, even potential discredit to a public agency may be considered cause for termination. (*Lake v. Civil Service Commission* (1975) 47 Cal.App.3d 224, 228.) In this case, there has been actual, demonstrable harm to Merenda's credibility and to the credibility of the OPD.

A penalty is not a manifest abuse of discretion when reasonable minds can differ regarding its propriety. (*Kazensky v. City of Merced, supra,* 65 Cal.App.4th at p. 54.) In *Kazensky*, two city mechanics were fired for taking excessively long breaks and leaving work early. The trial court concluded that the terminations were excessive, and ordered

12

reinstatement. The appellate court reversed, holding that: "'In reviewing the penalty imposed by an administrative body, which is duly constituted to announce and enforce such penalties, neither a trial court nor an appellate court is free to substitute its own discretion as to the matter nor can the reviewing court interfere with the imposition of a penalty by an administrative tribunal because in the court's own evaluation of the circumstances the penalty appears to be too harsh.'" (*Id.* at p. 75.)

Here, whatever his motives, Merenda's conduct damaged his credibility and the OPD by creating a perception that OPD investigators might manipulate or conceal evidence. Windom testified that he considered Merenda's conduct unethical and that it adversely affected the OPD and its clients. Merenda himself acknowledged that he could be confronted by the memorandum in future cases. An expert witness, Paul Meyer, testified that Merenda's lack of credibility would impact every future case. Meyers also testified that the consequences of credibility issues are even more significant in criminal cases because the witnesses often have criminal convictions or other issues and many jurors favor the prosecution. Meyers opined that the OPD would have to obtain a client's waiver before permitting Merenda to work on any given case.

Merenda argues that the testimony of Windom and Meyer regarding the damage caused by Merenda's statement is speculative and cannot support a penalty of termination. However, the facts of *Yancey v. State Personnel Board* (1985) 167 Cal.App.3d 478 are distinguishable. *Yancey* involved the off-duty conduct of a state correctional officer unrelated to his job duties—wearing nothing but female undergarments in public. There was speculative testimony by a psychiatrist and another

13

correctional officer that the off-duty incident would make it substantially more difficult for the dismissed officer to do his job. (*Id.* at pp. 483-484.) The dismissed officer countered with evidence that many other correctional officers had no concern about his ability to work, thus negating the employer's evidence. Therefore, the appellate court held that, on "the basis of the record before us, we conclude that no substantial evidence exists that appellant is unfit for his employment, and that if any discipline is warranted, the penalty imposed was grossly excessive." (*Id.* at p. 487.) Unlike the evidence in *Yancey*, the opinions of Windom and Paul Meyer are not factually unsupported. Both Windom and Meyer possess extensive experience in criminal litigation and are fully equipped to testify about Merenda's future effectiveness as a defense investigator.

Furthermore, the evidence of how Merenda's memorandum adversely affected the Coronado case is not hypothetical, speculative, or conjecture. Judge Thierbach was so concerned he removed the OPD from the case and made the memorandum public. This court later agreed there was "substantial evidence to show that the public defender's office has a potential conflict of interest," and remanded the case to obtain a waiver from the Coronado defendant: "However, whether or not members of the public defender's office are actually guilty of suborning perjury or any misconduct is not as significant as the fact that the nature of the investigation may become an issue during trial. Even if the defense does not call Lee as a witness, the prosecution may very well do so, particularly if the public defender asserts a 'false confession' defense. His statements given to the investigators will then become an issue. Thus, trial counsel, whether it be Steele or another deputy from the public defender's office, may very well be placed in the position

14

of defending the actions of the investigators and the entire defense team compromising his efforts on defending his client. . . . It is also possible that their conduct may tarnish defendant in the eyes of the jury. [Fns. omitted.]"

Even though a trial court would have the discretion to exclude impeachment evidence in future cases, it does not insure that the evidence will actually be excluded. The discretion afforded to a trial court under Evidence Code section 352 does not cure the underlying problem regarding Merenda's credibility and the need to obtain the informed consent of every future criminal defendant.

In mitigation, Merenda argues that he had no prior discipline and had received positive work evaluations. He also contends he could be rehabilitated if challenged. Unfortunately, as the arbitrator articulated, nothing can truly mitigate the damage to Merenda's ability to testify credibly in court. Merenda can no longer perform his job. Merenda's conduct—offering to write a new report omitting evidence damaging to the defense—severely impaired Merenda's credibility not only in the Coronado case, but in every case on which Merenda might serve as an investigator. Regardless of how thorough and ethical Merenda might have been in any subsequent investigations, the fact that he offered to withhold relevant evidence would be used to challenge his credibility in every future case on which he worked. Under these circumstances, termination of his employment was not an abuse of discretion.

## VII

## JUDICIAL ESTOPPEL

Merenda argues judicial estoppel prevented the OPD from terminating his employment based on a position contrary to the position it adopted in the writ proceeding. In the writ proceeding, the OPD was legal counsel, advocating on behalf of Coronado and arguing that Judge Thierbach's order removing the OPD from the case was wrong because he misinterpreted the 2008 memorandum. In the present case, the OPD argues on its own behalf that the 2008 memorandum completely undermines Merenda's effectiveness as a defense investigator.

A review of the evidence demonstrates that three of the five relevant factors of judicial estoppel cannot be satisfied and therefore the doctrine does not apply. For judicial estoppel to apply, the party asserting the defense must establish that: "(1) the same party has taken two positions (2) the positions were taken in judicial or quasi-judicial administrative proceedings (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true) (4) the two positions are totally inconsistent and (5) the first position was not taken as a result of ignorance, fraud, or mistake." (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183.) The second and fifth factors are not disputed.

The first obstacle Merenda confronts is the absence of privity. The party at issue in this proceeding is the OPD, or the County of Riverside. The OPD was not a "party" in the writ proceeding. Instead, the OPD represented Juan Coronado. The other parties were the respondent, Riverside County Superior Court, and the real party in interest, the

16

People of the State of California, represented by the District Attorney's office. Because the OPD acted as Coronado's legal counsel, it was not a party as it is now.

Moreover, the argument advanced by Coronado in his writ petition, regarding Merenda's memorandum, was not "totally inconsistent" with the positions advanced by the OPD in this case. (*Jackson v. County of Los Angeles, supra*, 60 Cal.App.4th at p. 183.) The issue in this case is whether there was good cause to justify Merenda's termination because Merenda could not perform his job—not whether the OPD's office had a conflict of interest in the Coronado criminal case because Merenda had actually tried to suborn perjury or hide evidence. This appellate court concluded only that defendant Coronado was deprived of effective assistance of counsel and there was substantial evidence to show that the OPD had a potential conflict of interest. The argument advanced by Coronado in the criminal writ was not successful and the appellate court's decision actually supports the conclusions reached by the arbitrator and the trial court in this case.

The relevant parties in the Coronado writ proceeding and the instant action are not the same. The positions advanced by Coronado in the criminal writ proceeding are not totally inconsistent with the positions advanced by the OPD in this proceeding. Judicial estoppel therefore does not apply.

VIII

DISPOSITION

Whatever he meant by the words he used, Merenda's ill-judged final sentence in the 2008 memorandum has irreparably damaged his ability to serve as an investigator for

17

the OPD.  The OPD's decision to terminate Merenda's employment is supported by substantial evidence in the record and was not an abuse of discretion.  We affirm the judgment.  The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

McKINSTER

J.